44486, 44487. HOLLAND FURNACE COMPANY v. WILLIS; and vice versa.

WHITMAN, Judge. Jack R. Willis sued the Holland Furnace Company (hereafter called "Holland") for damages for negligence. Holland contracted with Willis to install a central heating and air-conditioning system in the latter's home.

Willis' case has three aspects. He sought by his complaint and by his evidence to show that there had been negligent structural alteration of the supporting structure beneath the house, where the furnace was installed, with the result that the floor sagged, separated and cracked the walls.

Second, Willis, through his complaint and evidence, sought to show that the furnace itself was negligently installed in that the hole under the house which was dug to receive the furnace had no drainage provision, with the result that water

accumulated in the hole causing the unit to malfunction and set fire to the house.

The complaint also prayed for punitive damages alleging that the agents and servants of Holland who did the work were grossly incompetent and unskilled and lacked even the most fundamental knowledge of carpentry required for the installation of the system, and were "drunk" while performing work on the house and that the doing of the work and the installation of the furnace with such workmen was wilful and wanton misconduct.

The jury returned a verdict for the plaintiff as follows: "[I]n the sum of $8,670.62 for damages caused by fire; and in the sum of $1,000.00 for damages caused to his house other than by fire; and in the sum of $3,625.00 for punitive damages."

The appeal in Case 44486 is by the defendant below and is from the judgment entered on the verdict. There are numerous enumerated errors. Case 44487 is a cross appeal by Willis, but there has been no enumeration of errors filed.
*Held:*

1. Two enumerations of error deal with a hypothetical question. The exact question was as follows: "Now, assume that a person purchased a combination furnace and air-conditioning system with a furnace of 140,000 B.T.U. output, and assume that this furnace was installed in a house with a square footage of between 2,100 and 2,200 square feet and that the house was of a brick veneer construction. Further assume that the furnace was installed by being placed in a hole in the ground underneath the house so that the top of the furnace was separated from the house by approximately 10 or 12 inches. Further assume that there was no drainage provided for this hole so that when there was a continuous rain for any period of time that the hole—the water would seep into the hole and gradually begin to fill the hole. Assume that the air was circulated into the house through ducts leading to each room and returned to the furnace by a return air duct. Further assume that the furnace was installed sometime between May and December of 1962. When the air conditioner was turned on the house did not cool to a comfortable temperature and fans were placed in front of the registers to suck air out of the vents. Likewise, in the meantime when the heat was turned on the house remained uncomfortably cool and fans were placed in front of the registers to pull the warm air out

of the system and this enabled the temperature in the house to be somewhat higher. Further suppose that the vent pipe for the furnace was a 6-inch asbestos pipe and suppose that when the furnace was on one could not touch that vent pipe in the attic of the house, some ten to fifteen feet away from the furnace because it was too hot. Suppose that on the night of January 8, 1962, 1964 [the year 1962 was doubtless a lapsus linguae, corrected by 1964, the correct year] smoke was observed coming from the registers and immediately after this someone looked under the house and saw that the furnace itself was enveloped in a ball of fire and also there was fire shooting out of the top of the vent pipe on top of the house some 3 to 10 feet. The house caught fire destroying the floor above the furnace, the walls, the ceiling and the roof directly over the furnace. Further assume that the owner did not have to any time re-light the pilot light of this furnace. . . [A]ssume . . . that on the night of the fire it was raining and the hole in which the furnace was situated did begin to fill with water. Now, Mr. Hollis, based on these facts, in your opinion what caused the fire?"

The answer that was given was rather elaborate, but the substance of it was that when the rising water level in the hole reached the level of the orifice hole of the main burners it stopped the normal path of gas flow, i.e., down the venturi tube and out the top of the burner, and instead of flowing down the venturi tube it went straight up as free gas "in the top of the furnace and all around it, any where it could get to" where it was ignited by the pilot light and burned uncontrollably, and gas "burned outside under the cover over the burner tubes and out all the way through your exhaust system and out the stack and out the top of the house and somewhere between the top corner here and where it came out under the burner shield is where the ignition occurred . . . [t]his is my opinion of what would burn the house down in this case."

The witness, in answering the question, assumed a fact not included in the hypothetical question, that is, that the main burner orifices were on a lower level than the orifice for the pilot light. He stated on cross examination that his conclusion was dependent upon that fact.

The defendant moved that the answer be stricken but the motion was denied. We think the motion should have been

sustained. The answer, in assuming an additional fact not included in the question posed, was not responsive to the question. Furthermore, we have reviewed the evidence and find no evidentiary basis prior to the time the question was posed for assuming the physical make-up of the furnace was such as the answer assumed. The witness had testified that he had some engineering background; that he was familiar with the components of which furnaces were constructed and had designed a tobacco curer, a crop dryer and propane stand-by plants which utilized the same principles used in furnaces. He testified that he was familiar with furnaces made by the Holland Furnace Company, having previously, in connection with another matter, examined a Holland furnace of the same type but of a smaller "B.T.U." capacity. With regard to the latter matter, he testified that his attention had been focused on how the vent system had been installed and that he had run experiments to see if one particular vent or flu had been installed so as to get hot enough to ignite wood material in the proximity. But he testified that he had never seen the furnace involved in this case. An installation-operation-service manual for the furnace was admitted in evidence but the witness testified that it did not illustrate or describe the respective locations of the orifices of the main burners and pilot light which he had assumed to exist. When questioned on cross examination as to how he knew the pilot apparatus was situated in this furnace in the manner in which he assumed, he replied only "it has to be above." Such statement amounted to only the witness's opinion as to where the pilot apparatus on this furnace was situated with respect to the main burners. "An expert may give an opinion upon the *facts* testified to by other witnesses, but not upon *their opinions*." *Walker v. Fields*, 28 Ga. 237 (2). Even less may he answer by assuming the existence of a fact, such as the physical structure of something, which is crucial to the result reached in his expert analysis, when such fact has not been previously testified to or shown by other competent evidence to exist but has been supplied only by his *own* opinion. It was error to deny the motion to strike the answer.

2. Aside from the answer to the hypothetical question by the plaintiff's witness which, as we have ruled, should have been stricken, there was no other evidence of any breached duty

which proximately caused the fire and damage. There was evidence that the system never heated or cooled properly. There was evidence that the electric motor which ran the air circulation fan had been a source of difficulty; that it had to be replaced, once for catching fire and once for another reason. The house fire occurred on January 8, 1964, some 12 or 13 months after any representative of Holland had last examined or worked on the furnace. At the trial the plaintiff requested that the jury be charged on the doctrine of res ipsa loquitur. The trial court properly refused to charge the doctrine as inapplicable. See *Quick Shops v. Oldham*, 100 Ga. App. 551, 555 (111 SE2d 920); *Darlington Corp. v. Finch*, 113 Ga. App. 825, 827 (149 SE2d 861); *Spruell v. Ga. Automatic Gas &c. Co.*, 84 Ga. App. 657, 665 (67 SE2d 178). It was error, having regard only to the evidence as was admissible, to overrule the defendant's motion for directed verdict on the issue of liability for fire damage.

We do not pass on the remaining enumerations of error having regard to the fire damage aspect of the case.

3. The jury's finding of liability with regard to negligent structural alteration of the floor, i.e., excessive notching of load-bearing timbers and the removal of a pillar, causing damage to the house, is supported by the evidence and there is no enumeration of error in this regard. But it is contended that the court erred in refusing to grant the defendant's motion for directed verdict on the issue of liability for punitive damages.

Plaintiff's wife testified that two workmen appeared on the job one morning at 9 o'clock; that they came up through the hole in the floor which had been left there by the removal of the original floor furnace; that they appeared to her to be drunk; that "one went in there to where the vent was that come out of the wall in the girls' bedroom and it looked like he was going to check it but he passed out down on the floor and the other one was in the hall a-messing around—they had the thing to adjust a heating system . . . a thermostat . . . he looked like he was trying to turn it on but he couldn't stand up, he was propping"; that she could smell liquor or beer or something; that she called Mr. Middleton and he said he sent them out there to do electric work and he came and picked them up; that she had never seen the men before or after that incident; and that they did no work

because they were too drunk to work. She further stated that Mr. Middleton also came out there one morning "just about drunk" and asked her and her husband about having a beer with him, but they told him they did not drink or have it in their home and asked him not to have it out there.

The effect of this evidence is that the men were electricians, that they were drunk, and that if they did any negligent work it was in adjusting the heating system or thermostat. But the negligence alleged and sought to be proved in the case was in the structural alteration of the floor and in installing the furnace in a hole without drainage. "To authorize the imposition of punitive or exemplary damages there must be affirmative evidence of facts showing 'wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences.' *Co-op. Cab Co. v. Arnold,* 106 Ga. App. 160, 163 (126 SE2d 689)." *Mills v. Mangum,* 107 Ga. App. 614, 617 (131 SE2d 67). If we were to assume that the defendant knew or should have known that its agents or servants had arrived on the job intoxicated and permitted them to work in such condition, and further that they were negligent and such was ultimately responsible for some injury or damage, then, upon such damage the jury might be authorized to find punitive damages based upon a conscious indifference to the consequences. But that is far from the case here. The men were removed from the job and further were in no way connected with the negligent work which allegedly caused the damage.

It was error to deny the defendant's motion for directed verdict on the issue of punitive damages.

4. The defendant filed a plea of the statute of limitation. It is contended that the trial court erred in refusing to give the following request to charge: "I charge you that the burden of proof in this case is upon the plaintiff to prove by a preponderance of the evidence that this action was brought before it was barred by the statute of limitations."

The trial court did not err. The burden is on the defendant. *Savannah Bank & Trust Co. v. Meldrim,* 195 Ga. 765 (25 SE2d 567); *Raymond Boating &c. Club v. Brewer,* 38 Ga. App. 767 (145 SE 464). The case of *Jeffcoat v. Deas,* 33 Ga. App. 26 (125 SE 507), cited by the defendant, would appear to be contrary to the *Meldrim* case on the point in question and must yield thereto. See also *Code Ann.* § 81A-108 (c).

5. The court charged the jury in essence that the measure of damages for the damage to the house caused otherwise than by fire was "whatever sum it would require to put the house in the condition in which it was before it was injured," but that the jury was not required to use that measure if the replacement would be an absurd undertaking and that the costs of repair must be reasonable. Defendant excepted to this charge on the ground that the difference in fair market value before and after the damage was the proper measure under the evidence in this case.

Generally, where there is injury to a building and not to the land, the measure of damages is the cost of restoration to original condition unless restoration to the original condition would be an absurd undertaking. *Southern R. Co. v. Wooten,* 110 Ga. App. 6 (3) (137 SE2d 696), and citations.

We think the charge was sufficiently adjusted to the evidence and do not find it erroneous in the particular the appellant has complained of.

6. The results we have reached in the matter make it unnecessary to pass upon the appellant's remaining enumerations.

7. There has been no enumeration of errors filed in the cross appeal by Willis, Case 44487, and it is therefore dismissed.

The judgment in Case 44486 is affirmed on condition that the award of $8,670.62 for damages caused by fire and the award of $3,625 for punitive damages both be written off by the appellee, Jack R. Willis. Otherwise the case is reversed. See *Holston Box &c. Co. v. Vonberg & Bates,* 34 Ga. App. 298, 301 (129 SE 562).

*Case 44486 affirmed on condition; Case 44487 dismissed. Jordan, P. J., and Hall, J., concur.*

ARGUED JUNE 4, 1969—DECIDED NOVEMBER 26, 1969.

*Bloch, Hall, Hawkins & Owens, Ellsworth Hall, Jr., Ellsworth Hall, III,* for appellant.

*Adams, O'Neal, Steele, Thornton, Hemingway & McKenney, Robert S. Slocumb, Hardy Gregory, Jr.,* for appellee.