564 P.2d 194

**Leo L. PERALTA, Plaintiff-Appellee,**

v.

**Phillip U. MARTINEZ, Coursen B. Conklin, and Irvine G. Jordan, Defendants-Appellants.**

**No. 2786.**

Court of Appeals of New Mexico.

April 12, 1977.

Certiorari Denied May 4, 1977.

Ranne B. Miller, Robert H. Clark, Keleher & McLeod, Albuquerque, for defendants-appellant.

John W. Pope, Cowper, Bailey & Pope, Belen, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

This is a medical malpractice case. The appeal, which involves only plaintiff and Dr. Martinez, is concerned with the statute of limitation. The dispositive issue is when plaintiff's cause of action against Dr. Martinez accrued.

On February 15, 1971 Dr. Martinez operated on plaintiff. Allegedly, Dr. Martinez left a cottonoid in plaintiff's body at the time of this surgery. The cottonoid was discovered in surgery performed April 17, 1973. Plaintiff sued Dr. Martinez for malpractice; the complaint was filed January 8, 1976. Claiming the statute of limitation had run, Dr. Martinez moved for summary judgment. The motion was denied; we granted Dr. Martinez' motion for an interlocutory appeal.

The limitation period for bringing an action for "injury to the person" is three years. Section 23–1–8, N.M.S.A.1953. The three-year period begins to run from the time the cause of action accrues. Section 23–1–1, N.M.S.A.1953. *Roybal v. White*, 72 N.M. 285, 383 P.2d 250 (1963) states that an action for personal injuries for malpractice accrues at the time of the wrongful act causing the injury. *Roybal* was followed by this Court in *Mantz v. Follingstad*, 84 N.M. 473, 505 P.2d 68 (Ct.App.1972).

If *Roybal* is correct, the three-year limitation period would have expired on February 15, 1974. Dr. Martinez relies on *Roybal*. Plaintiff seeks to avoid the applicability of *Roybal*, arguing: (1) the limitation period did not begin to run until the cottonoid was removed; (2) the limitation period was tolled by alleged fraudulent concealment on Dr. Martinez' part, see *Hardin v. Farris*, 87 N.M. 143, 530 P.2d 407 (Ct.App.1974); and (3) although rejected in *Roybal*, supra, the limitation period should not begin to run until the malpractice is "discovered". We do not reach these contentions; in our opinion, the *Roybal* holding is not a correct statement of when the limitation period begins to run. Our opinion is based on the following six reasons.

1. The statute does not state that the limitation period runs from the time of the wrongful act. Compare § 58–33–13, N.M.S. A.1953 (Interim Supp.1976) which provides that the limitation period runs from the

date of the act of malpractice. Section 58–33–13, supra, is not applicable to this case. Laws 1976, ch. 2, § 32. The applicable statute is § 23–1–8, supra, which provides that the limitation period runs from the "injury".

■ 2. The reason that the limitation period runs from the injury rather than from the wrongful act, is that there is no cause of action for malpractice until there has been a resulting injury. *Spurlin v. Paul Brown Agency, Inc.*, 80 N.M. 306, 454 P.2d 963 (1969). A wrong without damage or damage without wrong does not amount to a cause of action. *Jensen v. Allen*, 63 N.M. 407, 320 P.2d 1016 (1958); see *Chisholm v. Scott*, 86 N.M. 707, 526 P.2d 1300 (Ct.App. 1974).

3. In personal injury actions not involving malpractice, the limitation period stated in § 23–1–8, supra, has been held to run from "the time of the injury not the time of the negligent act." *New Mexico Electric Service Co. v. Montanez*, 89 N.M. 278, 551 P.2d 634 (1976); see also *Chavez v. Kitsch*, 70 N.M. 439, 374 P.2d 497 (1962).

4. The distinction between the time of the injury and the time of the wrongful act has been applied in damage actions not involving personal injury. *Spurlin v. Paul Brown Agency, Inc.*, supra; *Chisholm v. Scott*, supra.

5. In holding that an action for personal injury from malpractice runs from the time of the wrongful act, *Roybal* cites only *Kilkenny v. Kenney*, 68 N.M. 266, 361 P.2d 149 (1961) as authority. *Roybal* states:

"New Mexico, following the majority, has held that a cause of action for personal injuries for malpractice accrues at the time of the wrongful act causing the injury. *Kilkenny v. Kenney*, supra."

*Kilkenny v. Kenney*, supra, does not support the holding in *Roybal*; *Kilkenny* applied the "time of injury" rule. One of the claims in *Kilkenny* was by the husband for personal injury to his wife for malpractice. The claim was for damages for the period between the time of the injury to his wife and the subsequent death of his wife. *Kilkenny* states:

". . . for such an action as brought by the appellant here, as husband, the same should have been filed within three years from the date of the injury."

6. The holding in *Kilkenny* cannot be disregarded as an unfortunate choice of words. A subsequent decision shows that the *Kilkenny* holding was deliberate and intended. *Chavez v. Kitsch* states:

"We recently held in the case of *Kilkenny v. Kenney*, 68 N.M. 266, 361 P.2d 149, that in an action brought by a husband as administrator and for himself and as next friend of his children, for damages arising out of injury and death of his wife, that § 23–1–8, supra, applied, and that the action should have been filed within three years from the date of the injury."

■ The holding in *Roybal* is inconsistent with the statute and with other New Mexico decisions. However, *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973) reminded this Court that we are to follow precedents of the Supreme Court. Are we bound to apply *Roybal*? We think not for two reasons: (1) Supreme Court decisions conflict as to when the limitation period begins to run in malpractice actions—*Roybal* conflicts with *Kilkenny*, yet *Roybal* relies on *Kilkenny* as authority; and (2) *Roybal* is a departure from the consistent approach in non-malpractice decisions which hold the limitation period runs from the date of the injury.

We hold that the limitation period began to run against plaintiff from the time of his injury and not from the time of the malpractice. Is this a distinction with a difference? Yes.

In *Layton v. Allen*, 246 A.2d 794 (Del. 1968) a hemostat was left in plaintiff's body during surgery in 1958; plaintiff first experienced pain in 1965. *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968) states:

"In this age of enlightened medicine and highly sophisticated curative treatment it is very likely that the maturation of injury resulting from negligent treatment would not evidence itself for well after

the . . . [time] provided for in the statute of limitations."

*Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959) states:

"The plaintiff . . . could hardly have launched his lawsuit on the day Dr. Morgan performed the operation because, at that time, no injury was yet inflicted. The injury became a reality when the sponge began to break down healthful tissue within the body of the plaintiff."

Whether the injury occurs at the time of the malpractice or subsequently, the limitation period begins to run from the time of the injury.

How is the time of the injury to be determined? *Ayers v. Morgan,* supra, states: "The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable."

*Layton v. Allen* states:

". . . when an inherently unknowable injury, such as is here involved, has been suffered . . . and the harmful effect thereof develops gradually over a period of time, the injury is 'sustained' . . . when the harmful effect first manifests itself and becomes physically ascertainable."

This is not the "discovery" rule. In *Layton,* supra, the limitation period did not run from "discovery" of the hemostat in 1966, the limitation period was held to run from 1965 "when the plaintiff first experienced pain caused by the unknown foreign object."

■ We hold the limitation period begins to run from the time the injury manifests itself in a physically objective manner *and* is ascertainable.

■ The complaint alleges that the injuries suffered by plaintiff because of the cottonoid were inherently unknowable to plaintiff. Affidavits submitted in support of Dr. Martinez' summary judgment motion are to the effect that: (1) plaintiff's continuing complaints of pain following the 1971 surgery were consistent with a herniated disc at the L5–S1 level (not the level operated on in 1971), and (2) "the only way the presence of the cottonoid could be discovered would be during surgery as, in fact, it was on April 17, 1973." This was not a showing that the injury manifested itself and was ascertainable prior to April 8, 1973 (three years prior to filing the complaint). Rather, Dr. Martinez' showing was that the limitation period did not begin to run until April 17, 1973. The complaint was filed within the limitation period.

Oral argument is unnecessary. The order denying summary judgment on the basis that the limitation period had not run is affirmed.

IT IS SO ORDERED.

HENDLEY, J., concurs.

SUTIN, J., specially concurring.

SUTIN, Judge (specially concurring).

Peralta sued defendant doctors for medical malpractice arising out of discovery of a cottonoid left at the site of prior surgery.

Peralta's amended complaint alleged claims for relief in three counts:

(1) Defendants negligently failed to complete the operation of February 15, 1971, by leaving a cottonoid at the site of surgery which remained in Peralta's body until April 17, 1973, when Peralta first became aware of it. Peralta's failure to learn of defendants' negligence and consequential injuries until April 17, 1973, resulted from his confidence in defendants and his belief that the operation had been completed with no foreign object left in his body.

(2) Defendants' failure to discover the cottonoid constituted continuing negligence by defendants, the last act or omission of which occurred on April 17, 1973.

(3) Breach of contract based on fraudulent concealment.

Dr. Martinez, by way of answer, set up the affirmative defense of the statute of limitations that plaintiff's claim based on allegations of negligence or other wrongful conduct occurring prior to January 8, 1973, was barred by the applicable statute of limitations.

The trial court properly ruled that the contractual obligation of defendants merged in the tort action on the issue of limitations because ". . . the statute of limitations for injuries to the person applies, even though the cause of action stated is ex contractu in its nature." *Chavez v. Kitsch*, 70 N.M. 439, 444, 374 P.2d 497, 500 (1962). We so held in medical malpractice actions. *Mantz v. Follingstad*, 84 N.M. 473, 505 P.2d 68 (Ct.App.1972).

Dr. Martinez' motion for summary judgment was *denied* upon one ground: Peralta's claim for relief was *not* barred by the applicable three-year limitation statute. Section 23–1–8, N.M.S.A.1953 (Vol. 5). Pursuant to § 21–10–3, N.M.S.A.1953 (Repl. Vol. 4, 1975 Supp.), we granted Dr. Martinez' motion to appeal the interlocutory order.

Doctors Conklin and Jordan remain as parties defendant in the action but are not parties on this appeal.

On *February 15, 1971*, Drs. Martinez and Jordan performed a spinal fusion on Peralta's back. A cottonoid was left at the surgical site. Ordinarily, plaintiff's claim for relief would have expired on *February 15, 1974*. The complaint was filed *January 8, 1976*.

Our duty is to determine whether plaintiff's claim accrued as a matter of law prior to *January 8, 1973*.

A. *Findings of Fact*

The trial court found:

1) That Plaintiff's claim as against this Defendant is not barred by the applicable statute of limitations, NMSA § 23–1–8 (1953), as a matter of law because:

a) There is a factual issue of whether *from the time of discovery, on April 17, 1973, of a foreign body at the site of prior surgery the said defendant fraudulently concealed from the Plaintiff the fact the said cottonoid was a cause of disability experienced by the Plaintiff* from February, 1971, through the time of subsequent surgery on April 17, 1973.

b) The applicable statute of limitations, NMSA § 23–1–8 (1953), does not

begin to run in medical malpractice actions, wherein it is alleged that a foreign body was allowed to remain in a surgical site, *until the surgical procedure is completed by removal of the foreign body*. Therefore, the said statute of limitations did not begin to run in the present case until April 17, 1973. [Emphasis added.]

A cottonoid is a small sponge approximately 6/10″ × 1/10″ in size.

On appeal, Dr. Martinez challenged both findings.

The burden is on Dr. Martinez to prove that the cause of action accrued more than the statutory time before the commencement of the action. *Insurance Company of North America v. Knight*, 8 Ill.App.3d 871, 291 N.E.2d 40 (1972); *Van de Wiele v. Koch*, 256 Or. 349, 472 P.2d 803 (1970); *Holland Furnace Company v. Willis*, 120 Ga.App. 733, 172 S.E.2d 149 (1969); 54 C.J.S. Limitations of Actions § 386 (1948).

On motion for summary judgment, Dr. Martinez must establish, as a matter of law, that the cause of action accrued *prior* to January 8, 1973. To support the trial court's order, we may closely scrutinize the papers supporting the movant. *United States v. Western Electric Co.*, 337 F.2d 568 (9th Cir. 1964). This was a trial by affidavits.

B. *Facts Presented by Dr. Martinez*

Dr. Martinez, a neurosurgeon, first saw Peralta in January, 1971, at which time Peralta complained of low back difficulties and gave a history of a job related injury in September, 1969, with subsequent treatment, including a lumbosacral fusion in February, 1970, and a fusion at the L–4 level in August, 1970. In January, 1971, Peralta's complaints were consistent with a possible herniated disc at the L–4,5 level.

On February 15, 1971, Dr. Jordan, an orthopedic surgeon, and Dr. Martinez performed a lumbar laminotomy with removal of the L–4,5 disc and repair of the fusion. No significant complications were noted and Peralta was discharged from the hospital on February 24, 1971.

On March 23, May 4 and November 10, 1971, Peralta was re-examined. He continued to experience low back problems and on November 16, 1971, a myelogram study was performed at the hospital. The films indicated a defect at the L5–S1 level consistent with a herniated disc at that level. This finding was consistent with Peralta's complaints at that time. It was the opinion of Dr. Martinez and his associate that surgical procedure should be performed with the expectation that Peralta's discomfort would be relieved. Mr. Peralta declined.

On September 25, 1972, Peralta was examined again. Additional surgery had been and was indicated, but Peralta was reluctant to accept another operation.

In April, 1973, Dr. Conklin, an orthopedic surgeon, had Peralta admitted into the hospital and Peralta was seen by Dr. Martinez. On April 17, 1973, Dr. Conklin and Dr. Martinez performed an exploratory operation and removed the cottonoid from the area where the last surgery was performed in February, 1971.

### C. Dr. Martinez' facts do not establish basis for bar of claim

Section 23–1–1, N.M.S.A.1953 (Vol. 5) reads:

> The following suits or actions may be brought within the time hereinafter limited, respectively, *after their causes accrue*, and not afterwards, *except when otherwise specially provided.* [Emphasis added.]

Section 23–1–8 provides in pertinent part:

> . . . *for an injury to the person* . . . , within three [3] years. [Emphasis added.]

Effective February 27, 1976, the Medical Malpractice Act was adopted. This is the first exception to the accrual statute. Section 58–33–13, N.M.S.A. (1976 Interim Supp.) reads in pertinent part:

> No claim for malpractice arising out of *an act of malpractice* . . . may be brought . . . unless filed within three [3] years after the date that *the act of malpractice occurred* . . . . [Emphasis added.]

This statute was not in effect at the time Peralta's claim was filed. It does not have retroactive force. However, it is significant to note the difference between "an injury to the person" and "an act of malpractice."

In the instant case, "an act of malpractice" occurred on February 15, 1971, when a cottonoid was left at the surgical site. But, when did Peralta suffer "an injury to the person"? No injury was inflicted on February 15, 1971, because the mere presence of a small sponge in the spinal column did not cause "an injury to the person," nor pain and suffering, nor disability.

Dr. Martinez established that during the year 1971, Peralta experienced low back problems and underwent surgery; that low back problems continued which could have been caused by the defect at the L5–S1 level that was consistent with a herniated disc at that level. No evidence was presented that Peralta's low back problems were caused by the cottonoid. We cannot assume, for purposes of summary judgment, that, prior to January 8, 1973, Peralta suffered an injury to the person caused by the cottonoid; that the cottonoid caused a personal injury by breaking down healthful tissue within Peralta's body, or caused Peralta's first experience of pain. A genuine issue of material fact exists on whether Peralta suffered an injury to the person prior to January 8, 1973.

There are four accrual dates from which the statute of limitations commences to run: three years from (1) an injury to the person, (2) the last treatment, (3) the act of malpractice, and (4) in fraudulent concealment, three years from the time that the right of action is discovered by Peralta, or, by the exercise of ordinary diligence, could have been discovered.

### (1) The statute commences to run from the date of the patient's injury.

In tort claims, there is no cause of action for negligence until there has been a result-

ing injury, and the statute of limitations does not begin to run until the injury occurs. *Spurlin v. Paul Brown Agency, Inc.*, 80 N.M. 306, 454 P.2d 963 (1969); *Chisholm v. Scott*, 86 N.M. 707, 526 P.2d 1300 (Ct. App.1974). This rule also applies in medical malpractice. *Kilkenny v. Kenney*, 68 N.M. 266, 361 P.2d 149 (1961); *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959); *Layton v. Allen*, 246 A.2d 794 (Del.1968), quoted in *Gaston v. Hartzell*, 89 N.M. 217, 549 P.2d 632 (Ct.App.1976); *Peterson v. Roloff*, 57 Wis.2d 1, 203 N.W.2d 699 (1973), dissenting opinion; *Ragan v. Steen*, 229 Pa.Super. 515, 331 A.2d 724 (1974); *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968).

*Kilkenny v. Kenney*, supra, was an action for wrongful death by way of medical malpractice. On *December 12, 1955*, due to the negligence of Dr. Kenney, Kilkenny suffered a diabetic coma, or insulin shock, resulting in total incompetence and from which she died December 2, 1958. The complaint was filed *November 12, 1959, more than three years after the date of the injury.* The Court said:

> In view of this language, we hold that § 23–1–8, supra, is the applicable statute, and that for such an action as brought . . . , *the same should have been filed within three years of the date of the injury.* [68 N.M. at 270, 361 P.2d at 151] [Emphasis added.]

The negligent act and the injury occurred simultaneously. Yet the Court chose "the date of the injury" as the accrual date.

In every tort action, there are at least three essential elements, (1) the negligent act or breach of duty, (2) the causation, and (3) an injury. Until the injury occurs, no harm is done and there is nothing to be compensated. In a tort claim, "injury" means some harm recoverable in money damages. " 'Wrong without damage, or damage without wrong does not constitute a cause of action.' " *Jensen v. Allen*, 63 N.M. 407, 409, 320 P.2d 1016, 1017 (1958). When such harm occurs, a cause of action accrues. In *Kilkenny*, as in many malpractice cases, although the injury and the negligent act occurred simultaneously, the

cause of action accrued on the date of the injury and not the negligent act.

Since injury is necessary to establish a cause of action, the question becomes, what is an injury and when does an injury occur in a medical malpractice case? The answer is that the injury does not occur until it manifests itself in some recognizable harm to the victim.

*Ayers* was also a "sponge" case. The Court said:

> The plaintiff in the case at bar could hardly have launched his lawsuit on the day Dr. Morgan performed the operation because, at that time, no injury was yet inflicted. *The injury became a reality when the sponge began to break down healthful tissue within the body of the plaintiff.* [154 A.2d at 790] [Emphasis added.]

In *Layton*, a metallic hemostat was left in the patient's body. The Court said:

> Upon the bases of reason and justice, we hold that when an inherently unknowable injury, such as is here involved, has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect thereof develops gradually over a period of time, *the injury is "sustained" under § 8118 when the harmful effect first manifests itself and becomes physically ascertainable.* Translated in the terms of this case, *we hold that the limitations period commenced to run when the plaintiff first experienced pain caused by the unknown foreign object.* Since that event occurred in 1965 and this action was filed in 1966, the action is timely. [246 A.2d at 798] [Emphasis added.]

In *Wilkinson*, the Court said:

> To construe the statute narrowly so as to preclude a person from obtaining a remedy simply because the wrong of which he was the victim did not manifest itself for at least two years from the time of the negligent conduct, is clearly inconsistent with the concept of fundamental justice. To require a man to seek a remedy before he knows of his rights, is palpably unjust. [243 A.2d at 753]

The limitation statute must be read in the light of reason and common sense, and in a manner that the legislature intended. Section 23–1–8 was enacted in 1880, almost 100 years ago. It related the time of accrual to "an injury to the person." This time of accrual was applicable to every tort claim involving "an injury to the person." It never excluded medical malpractice until 1976 when the claim was barred three years after the act of malpractice occurred. To construe § 23–1–8 otherwise produces a result that is absurd, unreasonable and harsh. Prior to 1976, the legislature did not intend, in a malpractice case, to require a patient, without knowledge of the negligence of a surgeon nor the existence of an injury, to open up his body like a door and look in to ascertain what occurred. Neither did the legislature intend that a patient be deprived of his remedy before he knew of his rights. Generally, public policy speaks in favor of tolling the statute of limitations. *Gaston*, supra. In keeping with this policy we adopted the maxim that no doctor may obtain advantage of his own wrong. *Hardin v. Farris*, 87 N.M. 143, 530 P.2d 407 (Ct.App.1974).

In medical malpractice "an injury to the person" occurs when the foreign body breaks down healthful tissue within the body of the patient, or when the patient first experiences pain caused by the unknown foreign object. The cause of action accrues when the fact of injury is reasonably ascertainable. A genuine issue of material fact exists on whether Peralta suffered an injury to the person prior to January 8, 1973.

(2) *The statute does not commence to run until the last treatment of the patient.*

This rule of law was recognized in *Roybal v. White*, 72 N.M. 285, 383 P.2d 250 (1963). The Court said:

There is no allegation in the instant case of continued treatment by the doctor. Those cases [cited by plaintiff] fixing accrual of the cause of action *at the time of the last treatment* are not in point under the facts here present. [72 N.M. at 287, 383 P.2d at 252] [Emphasis added.]

*Roybal* did not accept nor reject this exception.

The "termination of treatment" exception has flourished for three-quarters of a century beginning with the "sponge" case of *Gillette v. Tucker*, 67 Ohio St. 106, 65 N.E. 865 (1902), 93 Am.St.Rep. 639 (1903). *Gillette* has been cited with approval in many states of the union until the Supreme Court of Ohio, like many other courts, swept aside all exceptions to the rule and declared in effect the modern rule that ". . . the negligent leaving of a metallic forceps and a nonabsorbent sponge inside a patient's body during surgery will toll the running of the statute of limitation upon that cause of action until such time as the patient discovers, or by the exercise of reasonable diligence should have discovered, the negligent act." *Melnyk v. Cleveland Clinic*, 32 Ohio St.2d 198, 61 Ohio Ops.2d 430, 290 N.E.2d 916 (1972), 70 A.L.R.3d 1 (1976); See Annot., 80 A.L.R.2d 368, 379 (1961), Later Case Service, p. 111 (1968), Later Case Service and Supplemental Cases issued April, 1976, p. 73.

The citation of cumulative authority is burdensome. We cite only the cases set forth in *Roybal*, each of which relied on *Gillette*. *Huysman v. Kirsch*, 6 Cal.2d 302, 57 P.2d 908 (1936); *Hotelling v. Walther*, 169 Or. 559, 130 P.2d 944 (1942), 144 A.L.R. 205 (1943); *Burton v. Tribble*, 189 Ark. 58, 70 S.W.2d 503 (1934). In *Roybal*, the surgeon-patient relationship terminated nine and one-half years before exploratory surgery discovered and removed the sponge.

The "termination of treatment" rule flows from the theory that the operation was not completed until the sponge is removed as alleged in Peralta's complaint; that the negligence of the surgeon in failing to remove a foreign substance after it had served its purpose, is a continuing tort, one that continues during the physician-patient relationship, and the limitation period does not begin to run until the date of removal of the foreign substance by the

physician who has continued to treat the patient through "the last treatment."

In *Mantz v. Follingstad*, supra, we said:

The statute of limitations was not tolled *during* the period of medical treatment. [Emphasis added.] [84 N.M. at 477, 505 P.2d at 72]

*Roybal* was cited. This sentence did not mean "the last treatment" as stated in *Roybal*. No period of medical treatment was involved in *Mantz*. Whether it tolls the statute of limitations depends upon whether the treatment continues until "the last treatment" when the foreign substance is discovered.

Whether the doctor-patient relationship continued to "the last treatment" is an issue of fact. *Frazor v. Osborne*, 57 Tenn. App. 10, 414 S.W.2d 118 (1966).

Under "the last treatment" rule, a genuine issue of material fact exists whether the limitation period commenced to run prior to January 8, 1973.

The facts presented by Dr. Martinez did not bar plaintiff's claim as a matter of law.

(3) *The act of malpractice accrual date is not followed.*

Dr. Martinez relies on *Roybal v. White*, supra. Roybal's complaint alleged "that defendant negligently left a sponge in plaintiff's abdominal cavity [on January 14, 1952] which resulted in the necessity of further surgery on July 24, 1961", nine and one-half years later. Based on this allegation, plaintiff's complaint was dismissed by the trial court and affirmed on appeal. The Court said:

New Mexico, following the majority, has held that a cause of action for personal injuries for malpractice accrues at the time of the wrongful act causing the injury. *Kilkenny v. Kenney*, supra. [72 N.M. at 287, 383 P.2d at 252]

*Kilkenny* did not hold that the cause of action for personal injuries accrued at the time of *the wrongful act causing* the injury. It held that the cause of action accrued from the date that the injury occurred.

*The "wrongful act" or "negligent act" is causation, not injury.*

*Roybal* states a rule that the period of limitations commences to run from the date of the negligent act. It seems absurd that in a tort action, the only defendant granted the benefit of the "wrongful act" theory as the accrual date, is the physician and surgeon. Every other defendant is bound by the "personal injury" theory as the accrual date as provided by statute. From the time the limitations Act was adopted, the legislature did not see fit to mention the "physician-patient" relationship until the recently adopted Medical Malpractice Act, supra. *Roybal* has judicially amended the statute of limitations to read that in a medical malpractice action *only*, the limitation period begins to run from the date of the "wrongful act." In all other tort actions, it runs from the date of the injury. This power rests solely in the legislature.

We are not bound by *Roybal* when the law provides other accrual dates for the commencement of the limitation period.

(4) *In fraudulent concealment, the statute begins to run from the time Peralta's right of action is disclosed, or in the exercise of ordinary diligence could have been discovered.*

Dr. Martinez claims that there was no factual or legal basis for the trial court's finding 1(a) supra on fraudulent concealment. It is unfortunate that courts have created a fiction or semi-myth called "fraudulent concealment" in medical malpractice when there is no fraud whatsoever. We have unfortunate consequences flowing from the careless use of this phrase. In medical malpractice, mere silence constitutes "fraudulent concealment." Upon this fiction, we test Dr. Martinez' claims.

(a) *There was a legal basis.*

Dr. Martinez claims that Peralta's first amended complaint did not "explicitly allege that the statute of limitations . . . should be tolled" because of fraudulent concealment; that the complaint did not allege, (1) that Peralta did not know he had

a cause of action on April 17, 1973; (2) that Dr. Martinez prevented Peralta from obtaining knowledge of a cause of action or a right of action; and (3) that Dr. Martinez tried to hide the fact that the cottonoid had been found in Peralta's body.

Our duty is to view Peralta's complaint in the most favorable aspect it will bear in opposition to Dr. Martinez' motion. *Institute for Essential Housing, Inc. v. Keith*, 76 N.M. 492, 416 P.2d 157 (1966).

Peralta's complaint contained three counts. It alleged in pertinent part that Dr. Martinez negligently left the cottonoid in Peralta's body; that with knowledge of the unsatisfactory results, and with knowledge or notice of their failure to complete the February, 1971, operation, he continued to treat Peralta until April 17, 1973, when the cottonoid was discovered and removed; that this was the first time Peralta became aware of the cottonoid in his body and his injury; that Dr. Martinez knew or should have known that Peralta's body could not put him on notice of the negligence and injuries; that Peralta placed full confidence in Dr. Martinez and relied on his knowledge. "Accordingly, the limitation of action provisions of Section 23-1-8, N.M.S.A. 1953 *are tolled in accordance with law and Section 23-1-7, N.M.S.A. (1953), and Plaintiff's right of action accrued not before but on or about April 17, 1973.*" [Emphasis added.]

By reference to § 23-1-7, from which fraudulent concealment arose, *Roybal*, supra, the complaint alleged that the statute of limitations was tolled by reason of fraudulent concealment.

*Hardin v. Farris*, supra, stated the rule as follows:

We therefore conclude that where a party against whom a cause of action accrues *prevents the one entitled to bring the cause from obtaining knowledge thereof by fraudulent concealment* [Citation omitted], *or where the cause is known to the injuring party, but is of such character as to conceal itself from the injured party* [Citation omitted], the statutory limitation on the time for

bringing the action will not begin to run *until the right of action is discovered, or, by the exercise of ordinary diligence, could have been discovered.*

. . . [M]ere silence constitutes fraudulent concealment. [Emphasis added.] [87 N.M. at 146, 530 P.2d at 410.]

Peralta's complaint stated a claim for relief on the theory of fraudulent concealment.

(b) *There was a factual issue.*

The only evidence presented by Dr. Martinez on the claim of fraudulent concealment consisted of a lack of knowledge of the presence of the cottonoid at the surgery site and that the only way it could have been discovered, and, was in fact discovered, was by the April 17, 1973, surgical exploration. This evidence is insufficient to bar a claim for fraudulent concealment. Dr. Martinez did not disclose anything to Peralta.

There are two concepts that destroy the claim of Dr. Martinez: (1) the surgeon-patient relationship, and (2) the meaning of fraudulent concealment.

(1) The relationship of surgeon-patient is one of trust and confidence and it imposes on the surgeon the duty to speak. *Hardin v. Farris*, supra. In all dealings with a patient, the surgeon must use the utmost good faith or he is guilty of fraud. *Batty v. Arizona State Dental Board*, 57 Ariz. 239, 112 P.2d 870 (1941). He must reveal to the patient that which, in his best interests, it is important that he should know. *Cannell v. Medical and Surgical Clinic, S.C.*, 21 Ill. App.3d 383, 315 N.E.2d 278 (1974); *Emmett v. Eastern Dispensary and Casualty Hospital*, 130 U.S.App.D.C. 50, 396 F.2d 931 (1967). This includes a full and fair disclosure of all facts which materially affect the patient's rights and interests. A patient has a right to know the cause of his disability. Withholding information, in a sense, amounts to a misrepresentation. *Wohlgemuth v. Meyer*, 139 Cal.App.2d 326, 293 P.2d 816 (1956); *Stafford v. Shultz*, 42 Cal.2d 767, 270 P.2d 1 (1954).

(2) Reduced to its essentials, fraudulent concealment is nothing more than a riposte to a limitation of action defense because statutes of limitation are shields to protect the unwary surgeon from the prosecution of musty claims dredged up by tardy patients. However, where a surgeon has misled a patient by concealment in order to induce the patient to believe that a cause of action does not, in fact, exist, the surgeon seeks to use the statute of limitations as a sword. The statute of limitations cannot be converted into an instrument of fraud. This use is forbidden by law. "Fraud vitiates anything. Courts will not uphold fraud, or presume the Legislature intended to do so by allowing one in a confidential relationship to conceal an injury done another until the statute of limitations has run. The language of the statute should be so plain that there is no question as to its meaning if the Legislature intends to give a wrongdoer the advantage and benefit of his fraudulent concealment of an injury done another. Equity had its origin in granting relief from frauds when the old common law courts were too rigid in their reasoning to grant relief from grave injustices. We feel our interpretation of the statute of limitations in this case should be in accordance with the principles of equity." *Guy v. Schuldt*, 236 Ind. 101, 138 N.E.2d 891, 896 (1956). Ordinarily, a surgeon is estopped from relying on the statute because his prior negligent act indicates both a timely knowledge of liability and an intent to avoid liability by subterfuge.

A surgeon's failure to remove a sponge after closing the incision is negligence as a matter of law. *Thompson v. Barnard*, 142 S.W.2d 238 (Tex.Civ.App.1940), aff'd 138 Tex. 277, 158 S.W.2d 486 (1942). When this occurs, the suppression of something which the party is bound to disclose is fraudulent concealment. *Magee v. Manhattan Life Ins. Co.*, 92 U.S. 93, 23 L.Ed. 699 (1876). The failure of a surgeon to disclose acts of malpractice constitutes a fraudulent concealment which tolls the statute of limitation. *Sheets v. Burman*, 322 F.2d 277 (5th Cir. 1963). Where a fiduciary relationship exists, and a duty to disclose follows, the patient does not have to prove affirmative acts of concealment on the part of the surgeon to deliberately conceal the act of malpractice or the right of action. Mere silence constitutes fraudulent concealment *Hardin v. Farris*, supra; *Higbee v. Walsh*, 229 Iowa 408, 294 N.W. 597 (1940).

We have uniformly held that when the law imposes a duty upon a party to speak rather than to remain silent in respect to certain facts within his knowledge, he must disclose the information in order that the party with whom he is dealing may be placed on an equal footing. *Everett v. Gilliland*, 47 N.M. 269, 141 P.2d 326 (1943); *Barber's Super Markets, Inc. v. Stryker*, 84 N.M. 181, 500 P.2d 1304 (Ct.App.1972).

On April 17, 1973, when the cottonoid was discovered and removed, Dr. Martinez knew then he had committed an act of negligence in prior surgery. He knew then that the cottonoid was the cause of Paralta's disability. He knew then that Peralta had a right of action. He was silent.

We recognize how difficult it is for a surgeon to disclose the negligent act. Sponge cases, like the instant case, have occurred throughout the twentieth century. When that foreign substance does harm to a patient, equity comes along in a judicial sense to notify the surgeon that if he does not confess his error, he cannot hide behind the statute of limitations. He is responsible for the delay in the filing of a claim for relief, and the patient, the ordinary human being, cannot be charged with filing a stale claim.

The failure of Dr. Martinez to disclose his act of malpractice to Peralta established fraudulent concealment. The limitation period began to run, not from the date of the wrongful act, but from the time that Peralta discovered, or, in the exercise of reasonable diligence, could have discovered his right of action.

D. *The trial court did not err when it accepted and considered Peralta's affidavit*

Dr. Martinez claims that Peralta's affidavit should not have been accepted and con-

sidered by the trial court. As heretofore determined, Peralta's affidavit was not essential to a determination of the claim of fraudulent concealment.

The issues raised by this claim of error is a matter of first impression. Because an answer can assist in the progress of the law on summary judgment, it is deemed to be essential to the administration of the procedural rules surrounding Rule 56 of the Rules of Civil Procedure that governs summary judgment.

In his affidavit, Peralta stated:

At no time during the Defendants' treatment of Affiant did any of the Defendants suggest, relate or otherwise inform Affiant that the cottonoid was the cause of Affiant's pains, particularly those pains radiating down his legs. *It is the belief of Affiant* that Defendants had said knowledge, as shown by [letters of Dr. Mora] with copies sent to Defendants. *It is the belief of Affiant* that Defendants failed to notify Affiant of this medical opinion in order to allow the statute of limitations to lapse, therefore, denying the Affiant the opportunity to seek redress, and at no time was Affiant aware of the cottonoid substances *before April 17, 1973.* That Defendants had knowledge of Dr. Mora's medical opinion on or about September 10, 1973, as illustrated by [Dr. Mora's letter] attached to this Affidavit. [Emphasis added.]

Dr. Federico Mora, a neurosurgeon, wrote two letters. They were dated March 26, 1973, and September 10, 1973. Unsigned copies were sent to Dr. Conklin, a co-defendant.

At the hearing on the motion for summary judgment, no record was made. The parties "agreed that Dr. Martinez' counsel had properly objected to the timeliness and the admissibility of plaintiff's affidavit at the summary judgment hearing before the trial court." The specific grounds upon which the objections were made, and the specific portions of the affidavit to which objection was made, do not appear of record. The motion for summary judgment was heard on September 24, 1976. The

order denying summary judgment was filed November 23, 1976. For two months, no action was taken to preserve for review the claimed error raised on appeal.

Rule 56(e) of the Rules of Civil Procedure [§ 21–1–1(56)(e), N.M.S.A.1953 (Repl. Vol. 4)] provides in pertinent part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers . . . referred to in an affidavit shall be attached thereto or served therewith.

The affidavit was admissible because it was subscribed and sworn to and it did set forth some facts as would be admissible in evidence at trial if no objection was made to inadmissible evidence. "Inadmissible affidavits are no different from inadmissible evidence. They may be stricken in the discretion of the trial judge, but will support a judgment if he elects to consider them and no objection is made." *United States v. Dibble,* 429 F.2d 598, 603 (9th Cir. 1970) (concurring opinion, Wright, J.). During the trial of a case, an objection to an admission into evidence which does not specify the particular ground on which the evidence is objectionable, will be treated on appeal as if no objection to such evidence has been made. *Ash v. H. G. Reiter Company,* 78 N.M. 194, 429 P.2d 653 (1967). We find no objection made to the admissibility of Peralta's affidavit.

When an affidavit is filed, the opposing party has alternative methods of attacking inadmissible matters, (1) by filing a motion to strike, pointing out specifically just what language or statements or exhibits the party wants to have stricken, or (2) by making an objection. *Associated Press v. Cook,* 513 F.2d 1300 (10th Cir. 1975); *Auto Drive-Away Company of Hialeah, Inc. v. I.C.C.,* 360 F.2d 446 (5th Cir. 1966); *Ernst Seidelman Corporation v. Mollison,* 10 F.R.D. 426 (D.Ohio 1950); *Klingman v. National Indemnity Company,* 317 F.2d 850 (7th Cir.

1963); *McSpadden v. Mullins*, 456 F.2d 428 (8th Cir. 1972); *Wimberly v. Clark Controller Company*, 364 F.2d 225 (6th Cir. 1966); *Monroe v. Board of Education of Town of Wolcott, Conn.*, 65 F.R.D. 641 (D.Conn. 1975); *United States v. Dibble*, supra; *Newton v. Misner*, 423 P.2d 648 (Wyo.1967); *Noblett v. General Electric Credit Corporation*, 400 F.2d 442 (10th Cir. 1968); 6, Pt. 2, Moore's Federal Practice § 56.22[1] (1976).

Absent a motion to strike or to otherwise object to the affidavits, any formal defects contained in the affidavits are deemed waived. This includes those requirements of Rule 56(e) such as lack of personal knowledge, inadmissibility of facts set forth and competency of the affiant to testify. *Associated Press*, supra; *United States v. Dibble*, supra; *Noblett*, supra; *Auto Drive-Away*, supra.

The reason that objection must be made to specific portions of the affidavit in the trial court is based on the rule that a moving party should not expect the court to go through the opposing affidavit "with a fine-tooth comb" and pick out the "certain portions" which a party, from his point of view, feels should be stricken. *Ernst Seidelman Corporation*, supra. The trial court rules upon each of the objections made by the moving party. *Monroe*, supra.

On appeal, for the first time, we learn the objections which Dr. Martinez has to Peralta's affidavit. They are, (1) lack of personal knowledge, (2) the admissibility of Dr. Mora's letters, and (3) the timeliness of the filing of Peralta's affidavit. The first two objections have been disposed. The third objection, being a matter of first impression, will be discussed.

(1) *The acceptance of an affidavit filed a day late was not an abuse of discretion.*

Peralta's affidavit was filed at the time of the hearing on the motion for summary judgment. Dr. Martinez objected to the timeliness of the filing. Rule 56(c) of the Rules of Civil Procedure provides that "The adverse party *prior to the day of hearing* may serve opposing affidavits." [Emphasis added.]

The admission of affidavits filed at the time of hearing on motion for summary judgment rests within the discretion of the trial court. *Beaufort Concrete Co. v. Atlantic States Construction Co.*, 352 F.2d 460 (5th Cir. 1965), cert. denied 384 U.S. 1004, 86 S.Ct. 1908, 16 L.Ed.2d 1018 (1966) (Justice Black, dissenting). In *Beaufort*, the trial court *denied* admission of affidavits. The Court of Appeals held that the trial court did not abuse its discretion. In the instant case, we hold that the *admission* of Peralta's affidavit was *not* an abuse of discretion. The reasoning can be found in the dissenting opinion of Justice Black. He said:

. . . Surely a judge should not have discretion to enter final judgment at will every time a slight lapse occurs which may delay for half a day or so the service of one of a multitude of papers that must be served during the trial and appeal of a lawsuit.

The summary judgment entered below indicates, in my opinion, a failure to appreciate that "The basic purpose of the Federal Rules is to administer justice through fair trial, not through summary dismissals as necessary as they may be on occasion." [384 U.S. at 1005, 86 S.Ct. at 1909, 16 L.Ed.2d at 1019]

We have uniformly held that "An abuse of discretion is said to occur when the court exceeds the bounds of reason, all the circumstances before it being considered." *Independent Steel & Wire Co. v. New Mexico Cent. R. Co.*, 25 N.M. 160, 165–66, 178 P. 842, 844 (1918). The refusal to deprive Peralta of his day in court because he failed to file the affidavit "prior to the day of hearing" did not constitute an abuse of discretion.