INSURANCE COMPANY OF NORTH AMERICA, Plaintiff-Appellant, *v.* JOSEPH H. KNIGHT, Director, Department of Financial Institutions (C. Austin Montgomery, Successor), Defendant-Appellee.

(No. 11535; 

Fourth District—November 29, 1972.

*Rehearing denied January 12, 1973.*

Gillespie, Burke & Gillespie, of Springfield, and Robert B. Ely III, of Media, Pennsylvania, (George B. Gillespie, of counsel,) for appellant.

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe and Samuel E. Hirsch, Assistant Attorneys General, of counsel,) for appellee.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Plaintiff sought a declaratory judgment determining that the Uniform Disposition of Unclaimed Property Act (Ill. Rev. Stat. 1963, ch. 141, par. 101, *et seq.*), was unconstitutional in so far as par. 109 of the Act required the plaintiff to report certain checks, drafts and credit memoranda to the Director of the Department of Financial Institutions, and to declare that plaintiff was not required under the statute to report or pay such items. Plaintiff's motion for summary judgment upon the complaint and answer was denied. Plaintiff's appeal to the Supreme Court was transferred to this Court.

An issue raised in plaintiff's original complaint has been determined in *Country Mutual Insurance Co. v. Knight*, 40 Ill.2d 423, 240 N.E.2d 612.

It is first argued that par. 109 of the statute denies constitutional due process in that there is no statutory definition of "intangible personal property", and leaves the definition of such to the Department thus creating an unconstitutional delegation of legislative power. It provides:

"All intangible personal property, not otherwise covered by this Act, including any income or increment thereon and deduct-

ing any lawful charges, that is held or owing in this State in the ordinary course of the holder's business and has remained unclaimed by the owner for more than 15 years after it became payable or distributable is presumed abandoned."

Upon consideration of the statute as a whole, the argument is not persuasive. Ill. Rev. Stat. 1965, ch. 141, par. 101 (d), defines a "holder" as follows:

"(d) 'Holder' means any person in possession of property subject to this Act belonging to another, or who is trustee in case of a trust, or is indebted to another on an obligation subject to this Act."

Sub-par. (f) defines an "owner" as follows:

"(f) 'Owner' means a depositor in case of a deposit, a beneficiary in case of a trust, a creditor, claimant, or payee in case of other choses in action, or any person having a legal or equitable interest in property subject to this Act, or his legal representative."

Throughout the statute it is made clear that such applies to sums or obligations due and owing by the holder to another who is termed the owner, viz.: par. 102 refers to deposits in financial institutions or other amounts for which such institution is directly liable; par. 103 concerns money owing by life insurance companies after a policy becomes due and payable; par. 104 concerns deposits owing by a utility company after services are terminated to the depositor or refunds are ordered, and there are several categories concerning money held in trust after such have become distributable.

Par. 109 is explicit that the "intangible personal property" referred to is that which is held and owing and is payable or distributable. Such section, except for the period of time prescribed, is in the identical language found in Sec. 9 of Uniform Laws Annotated, Vol. 9A. Editorially, the Illinois statute is related to the Uniform Act and we are directed to the notes of the Commissioners prepared for the Uniform Act in considering the interpretation of the statute. (S.H.A., ch. 141, p. 345.) The content and the purpose of par. 109 may be considered in the light of the note to Sec. 9 of the Uniform Act, which says:

"Section 9 is the omnibus section covering all other intangible personal property not otherwise covered by the more specific provisions of the Act. It should be noted that to be subject to the section the property must be held or owing in the 'ordinary course of the holder's business in this state.' A wide variety of items will be embraced under this section, including, by way of illustration, money, stocks, bonds, certificates of membership in corporations, securities, bills of exchange, deposits, interest,

dividends, income, amounts due and payable under the terms of insurance policies not covered by Section 4, pension trust agreements, profit-sharing plans, credit balances on paid wages, security deposits, refunds, funds deposited to redeem stocks, bonds, coupons and other securities, or to make a distribution thereof, together with any interest or increment thereon. If desired, these specific items could readily be written into Section 9 itself, thus perhaps adding to the clarity and ready understanding of the coverage of the section, although necessarily at the expense of brevity."

■■ Within the entire statutory scheme, it cannot be said that there is such want of statutory definition of intangible personal property as to deny due process or to establish an unconstitutional delegation of legislative power.

The complaint states several categories of specific situations and claims that, as to such, the statute is inapplicable, viz: (1) certain "outstanding drafts" which were offers of settlement of alleged claims under policies of liability insurance and that the drafts have not been cashed and no damages imposed upon the policy holder; (2) drafts "issued" to policy holders under policies of property insurance containing the provision that no action may be brought on the policy after one year after the date of the loss and such drafts have not been presented; (3) drafts "issued" in advance for services but such services were never furnished and "therefore said checks or drafts were destroyed"; (4) drafts or checks "issued' representing commissions or returned premiums paid to agents where credit was taken in subsequent accountings and the instruments "remain uncashed or have been destroyed; (5) drafts "issued" in settlement of claims where the claimant obtained judgment in a different amount and did not return the draft, and drafts "issued" in error as to amount or payee and correcting drafts were issued.

Plaintiff argues that the application of the statute to the several factual categories deprives plaintiff of constitutional due process and results in the unconstitutional taking of private property without compensation in that the statute creates a conclusive presumption of abandonment. It is also said that the legislature had infringed upon the judiciary in creating an irrebuttable presumption of abandonment.

Such propositions are bottomed upon the argument that the "mere issuance" of checks or drafts does not establish a binding obligation for the instrument may be conditionally delivered. As a naked principle, such are supported by the statutory intent as stated in the annotating comment to par. 109, which in a slightly different context includes the language:

"But the obligation characterized as intangible property may be

extinguished by contract as well as statute and this contractual limitation may be in the form of a condition subsequent, as in the case of a statute of limitations, or a condition precedent. Any attempt to abrogate these contractual limitations by statute might be met with the constitutional prohibition against impairing the obligation of contracts. * * * Certainly, it would seem that any definition of property subject to escheat should require that the liability be fixed and certain, rather than contingent."

The allegations as to the several categories are troubled by ambiguities of language creating actual uncertainty as to the fact apparently sought to be pleaded. An allegation of "outstanding" checks connotes the delivery of the instrument to the payee. If, in fact, there was no delivery, it would appear that the question cannot arise for no certain and fixed obligation would be owing. Allegations of the "issue" of drafts or checks, without more, denotes delivery. The Commercial Code (Ill. Rev. Stat. 1961, ch. 26, par. 3—102), states that "issue" is the "first delivery" of an instrument. The allegation that the instruments were "destroyed" suggests that if they were, in fact, destroyed by the maker, there would be no fixed obligation and an issue would not arise. In the context of the allegations we cannot agree that defendant's answer admits that a payee has destroyed the instruments, nor can destruction be reasonably inferred from a failure to cash or present such.

Plaintiff cites *Umbsen v. Crocker First Nat'l. Bank of San Francisco*, 33 Cal.2d 599, 203 P.2d 752. There the State's claim arose upon the fact that the bank had certified a check. There was no evidence as to who had procured the certification. It was held that if the maker obtained such certification there must be a showing of actual delivery, but if the payee had secured certification, title to the check was transferred. Upon that evidence the court held that there was no basis to infer delivery.

The Commercial Code (Ill. Rev. Stat. 1965, ch. 26, par. 3—122), provides that a cause of action accrues against a maker of a check or draft upon its date or, if without date, upon date of issue. Ill. Rev. Stat., ch. 141, par. 101, describes an "owner" for purposes of this statute as the payee of a chose in action. Upon the allegations of this complaint, it is not clear that the plaintiff alleges an absence of delivery to the payee of the several instruments. Certainly, such allegations do not require us to infer that there was a failure to deliver.

Checks or drafts which have become a chose in action by reason of delivery, clearly distinguish that case from *Oregon Racing Com. v. Multnomah Kennel Club*, 242 Or. 572, 411 P.2d 63 and *State v. Sperry & Hutchinson Co.* (N.J.), 139 At.2d 463. In the former it was held that

no cause of action accrues until a pari-mutal ticket is presented for payment, and that the defendant did not owe an obligation until such event occurred. The latter authority held that there was no obligation due or owing until the presentation of a completed book of trading stamps. It was concluded therefore that the money which might be paid for such books was not abandoned property as no cause of action had accrued.

Plaintiff argues that it has pleaded facts and circumstances showing that the items are neither reportable nor payable so that there is an explanation that the presumption of abandonment is erroneous within the language of par. 113 of the statute:

"[O]r if it appears that for some other reason the presumption of abandonment is erroneous, the holder need not pay or deliver the property, which will no longer be presumed abandoned, to the Director, but in lieu thereof shall file a verified written explantion of the proof of claim or of the error in the presumption of abandonment."

The plaintiff also alleges that with the passage of years and the functioning of office procedures, plaintiff's files have been destroyed so that the particular transactions cannot be reconstructed. Upon such allegations and supporting affidavit, plaintiff has, at most, stated that there have been transactions of the nature described but no more than explains a possibility or error in concluding that the instruments are abandoned property under the statute.

The latter allegations actually narrow the issue to that of the burden of proof and plaintiff contends that the State must show the existence of rights in owners to which the State may succeed for custodial purposes.

■■ We agree with the statement of plaintiff that the rights of the State are derivative from the rights of the owner, and that the State has no greater right than that of the payee owner. (*State v. Standard Oil Co.*, 5 N.J. 281, 74 At.2d 565; *State v. Elizabethtown Water Co.*, 40 N.J. 280, 191 At.2d 457.) It is the theory of the legislation at issue that it is custodial in character and that the State takes custody for the owner. *Uniform Laws Annotated*, Vol. 9A, p. 413., Commissioners Prefatory Note.

We therefore consider the matter upon the hypothesis that the payee, as owner, presented the check under the circumstances described in the categories alleged by plaintiff. Ill. Rev. Stat. 1965, ch. 110, par. 43 (4), provides that payment, satisfaction, discharge, estoppel, statute of limitations or want of consideration are matters of affirmative defense and must be pleaded as such. The burden of proof of such affirmative defense is upon the party asserting it. *Horst v. Morand Bros. Beverage Co.*, 96 Ill.App.2d 68, 237 N.E.2d 732.

■■ The trial court was correct in concluding that issuance of drafts or checks to third parties under circumstances which would normally indicate delivery creates *prima facie* evidence of intangible property which, after the statutory period, may be presumed abandoned, but we conclude that such evidence is subject to rebuttal either by the maker as holder or the payee as owner.

Plaintiff has filed as an appendix to his brief a memorandum of decision in the Superior Court of California which contains finding that transactions of the categories concerned herein were not payable as abandoned property. That memorandum shows, however, that such findings were made up on hearing evidence concerning the several items. Ill. Rev. Stat. ch. 141, par. 124, provides that upon refusal of a "holder" to deliver property as required by the statute, the Department "shall bring an action in a court of appropriate jurisdiction to enforce such delivery". Here, no such action has been brought and no determination made by a court upon facts in evidence concerning the items claimed to be neither reportable nor payable.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

SIMKINS and SMITH, JJ., concur.