**Thomas J. LOWRANCE,**
**Plaintiff–Appellee,**

v.

**Stephen J. HACKER,**
**Defendant–Appellant.**

No. 87–2388.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 7, 1988.

Decided Jan. 26, 1989.

L. Andrew Brehm, Schuyler Roche & Zwirner, Chicago, Ill., for defendant-appellant.

Morris W. Ellis, Ellis & Ellis, Chicago, Ill., for plaintiff-appellee.

Before WOOD, Jr., and COFFEY, Circuit Judges, and GRANT, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff Thomas J. Lowrance brought this action against Stephen J. Hacker to collect monies allegedly owed by Hacker as a result of Hacker's commodity trading activities. Hacker raised the affirmative defense of accord and satisfaction, claiming that agreement was reached between the parties discharging any remaining debts. The district court found that Hacker failed to establish the defense of accord and satisfaction and awarded the plaintiff $39,309.30. Hacker appeals from that judgment.

Plaintiff Lowrance, a resident of Illinois, originally filed this action in the Circuit Court of Cook County, Illinois. Defendant Hacker, a resident of Florida, timely removed the case to federal district court under 28 U.S.C. §§ 1441, 1446.

Lowrance was a licensed commodities trading advisor, engaged in clearing trades for customers involving commodity futures contracts bought and sold on the various commodity exchanges. Hacker was a heavy trader in the commodity futures market. From June to September, 1984, Hacker utilized Lowrance's services as a trading advisor. Lowrance brought this action as the assignee of Rosenthal & Co. ("Rosenthal"). Rosenthal was a commodities brokerage firm located in Chicago. Rosenthal acted as a clearinghouse for persons interested in trading commodity futures contracts. In February 1984, Hacker opened a customer account with Rosenthal. Hacker executed a limited power of attorney authorizing Lowrance to act as his agent in various trading transactions and Lowrance became Hacker's commodities trading advisor with respect to his Rosenthal account. Hacker agreed to indemnify any indebtedness arising from any trade or debit balance due thereon. All trading on Hacker's behalf was done through Lowrance.

During the period from June to September, 1984, Hacker actively traded in the futures markets. His trading was remarkably unsuccessful and during that time period, to cover losses and to meet margin requirements, Hacker deposited more than $500,000 into his Rosenthal account. Despite these deposits, Hacker's account had a debit balance of $52,309.30 at the end of all trading. Most of these losses were accumulated through trading that took place on September 13. On September 12, Hacker's account had a debit balance of approximately $17,000 and Hacker deposited $25,000 into his Rosenthal account on that date, giving him a credit balance of approximately $8,000. Losses taken on September 13 created a final debit balance of $52,309.30.

Pursuant to a contractual relationship between Lowrance and Rosenthal, Lowrance was required to pay Rosenthal the amount of any debit balance owed by one of his customers. Lowrance paid the $52,309.30 balance and received an assignment of all rights and remedies from Rosenthal. The district court found that on September 14, Lowrance informed Hacker by phone of the existence of a large debt in the approximate amount of $47,000. The amount later grew to $52,309.30 when Hacker's positions in another commodity were liquidated. Lowrance made numerous attempts to recover the debit balance from Hacker, who repeatedly refused to pay. On Sunday, November 4, Lowrance traveled to Hacker's residence near Orlando, Florida to discuss the situation in person. Hacker again refused to pay.

On February 21, 1985, Lowrance and Hacker discussed the $52,309.30 debt on the telephone. Hacker told Lowrance that a judgment in excess of $1,000,000 had just been entered against him in a proceeding

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

brought by American Can Co. Hacker then offered to make a partial payment of the debt. Lowrance claims that Hacker promised to pay $14,000 and never told him the payment was intended to settle the entire debt. Hacker claims that he offered $13,000 in satisfaction of the outstanding debt.

It is undisputed that on that same day Hacker sent Lowrance a form letter of agreement, unexecuted by Hacker, along with a check for $13,000. The letter provided in part that "in lieu of conditions which exist and lack of remedies available to improve them, I have enclosed a check which we discussed as full and final payment by me to you, your successors and assigns, for any and all outstanding balances which exist on this date of February 21, 1985." On the back of the accompanying $13,000 check, Hacker had added a provision that said "Accord and satisfaction understood in our settlement agreement."

Upon receipt of Hacker's check Lowrance deleted the words Hacker had added and inserted the following:

Restriction regarding settlement & accord & satisfaction refused. This check is accepted as partial payment only. All rights of endorser are reserved. Balance of $39,309.30 remaining due and payable plus all interest costs & fees.

Lowrance then negotiated the check. Lowrance never signed the purported agreement sent by Hacker. He never informed Hacker of his decision to strike the endorsement or of his addition of a new endorsement claiming to retain all rights to the remainder of the debt.

At trial, Hacker stipulated to Lowrance's prima facie case and offered an affirmative defense of accord and satisfaction. Hacker claimed that Lowrance had agreed to accept the $13,000 as full payment for the debt, that the check with its endorsement constituted evidence of the agreement, and that Lowrance improperly struck the accord and satisfaction language from the back of the check. Hacker also argued that his perilous financial situation created the necessary conditions for an accord and satisfaction. The district court, applying Illinois law, found that there was no accord and satisfaction in this case and awarded Lowrance $39,309.30.

The district court held that Hacker failed to establish the defense of accord and satisfaction because no bona fide dispute about the amount of Hacker's debt existed between the parties. Under Illinois law:

To constitute an accord and satisfaction there must be an honest dispute between the parties, a tender with explicit understanding of both parties that it was in full payment of all demands, and an acceptance by the creditor with the understanding that the tender is accepted in full payment. As with all contracts, to be enforceable there must be consideration, a meeting of the minds with the intent to compromise and, finally, execution of the agreement.

*W.E. Erickson Const., Inc. v. Congress–Kenilworth Corp.*, 132 Ill.App.3d 260, 269, 87 Ill.Dec. 536, 543, 477 N.E.2d 513, 520 (1985) (citations omitted). The burden of proving these elements lies with the party asserting the accord and satisfaction defense. *Kreutz v. Jacobs*, 39 Ill.App.3d 515, 349 N.E.2d 93 (1976) (citing *Insurance Co. of N. America v. Knight*, 8 Ill.App.3d 871, 291 N.E.2d 40, *appeal dismissed*, 414 U.S. 804, 94 S.Ct. 165, 38 L.Ed.2d 40 (1972)).

■ The testimony at trial revolved around the issue of whether there was a bona fide dispute as to the amount Hacker owed Lowrance. Illinois law requires that, in most situations, such a dispute exist. *Sears, Sucsy & Co. v. Insurance Co. of N. America*, 392 F.Supp. 398 (N.D.Ill.1975) (Accord and satisfaction "is an agreement or settlement of an existing dispute, controversy or demand which presupposes a disagreement as to what is due.") (citing *Canton Union Oil v. Parlin & Orendorff*, 117 Ill.App. 622, 624, *aff'd*, 215 Ill. 244, 74 N.E. 143 (1905)). *See also Quaintance Associates, Inc. v. PLM, Inc.*, 95 Ill.App.3d 818, 821–22, 51 Ill.Dec. 153, 154, 420 N.E.2d 567, 569–70 (1981) ("The partial payment of a fixed and certain demand which is due and not in dispute is no satisfaction of the whole debt even where the creditor agrees to receive a part for the whole and gives a

receipt for the whole demand."). This requirement is designed to insure that the necessary consideration is present to create the contract. *Erickson,* 132 Ill.App.3d 260, 269, 87 Ill.Dec. 536, 543–44, 477 N.E.2d 513, 520–21 (1985) (Partial payment of undisputed debt does not constitute necessary consideration.). The district court found that while Hacker had proven most of the elements required for an accord and satisfaction, he had failed to prove that a bona fide dispute existed concerning the amount of the debt.

At trial, Hacker argued that Lowrance had exceeded his authority in carrying out commodities trades, thereby creating unauthorized losses. Hacker asserted that Lowrance had churned his commodities account,[1] failed to follow Hacker's trading advice, and negligently managed his trading transactions. He maintained that Lowrance exceeded his authority in making the trades that led to the losses of September 13, since he had requested that Lowrance limit losses to the $8,000 left in his account at the beginning of the trading day. According to Hacker, these assertions show that there was a dispute as to the amount of the debt. Hacker claimed that he and Lowrance had discussed the disagreement on a number of occasions, culminating in the February 21 agreement to settle the debt with a $13,000 payment.

The district court rejected this testimony. The court noted that Hacker was a seasoned commodities trader who understood the risks involved in trading. He was well aware of the difficulties involved in controlling profits and losses in the market on any trading day. Most importantly, the district court found that Hacker never contested the amount of the debt at any time before he made his partial payment. In October when Lowrance wrote to Hacker asking for payment and setting out the details of the claim, Hacker failed to respond in writing and made no assertions that he disputed the amount during any of his numerous telephone conversations with Lowrance.

When a representative of Rosenthal contacted Hacker demanding payment, Hacker said nothing about any dispute concerning Lowrance's handling of his account. On February 21, the day Hacker sent the check and letter to Lowrance, he claimed that he had spoken with Lowrance about Rosenthal almost churning his account. While finding this testimony credible, the district court noted that such a claim was not a bona fide dispute since Hacker would have known he had no possible claim of churning against Rosenthal; all his trades were executed at Lowrance's direction and his only viable churning claim was against Lowrance himself.

This court reviews the factual findings of a district court sitting without a jury under the clearly erroneous standard. Fed.R. Civ.P. 52(a). *See In the Matter of Muller,* 851 F.2d 916, 920 (7th Cir.1988) ("Only if we are 'left with the definite and firm conviction that a mistake has been committed,' may we disturb the court's findings.") (citing *Anderson v. Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). A review of the record indicates that the district court was correct in its determination that no bona fide dispute existed. Hacker received reports of every trade executed by Lowrance on his behalf during their three month relationship. Hacker spoke with Lowrance nearly every day during that time period. At no time did he indicate any dissatisfaction with the way Lowrance was managing his account. The letter sent by Hacker to Lowrance along with the $13,000 check failed to state any credible grounds for disagreement about the amount of the debt. The accord and satisfaction defense is not meant to allow a debtor to avoid obligations by asserting the existence of a dispute at the last minute. There must be an honest disagreement between the parties to give rise to an accord and satisfaction, *Upper Avenue National Bank of Chicago v. First National Bank of Arlington Heights,* 81

---

1. In the parlance of commodities trading, churning "denotes a course of excessive trading through which a broker advances his own interests (e.g. commissions based on volume) over

those of his customer." *Costello v. Oppenheimer & Co., Inc.,* 711 F.2d 1361, 1367 (7th Cir.1983) (citing *Fey v. Walston & Co., Inc.,* 493 F.2d 1036, 1040 n. 1 (7th Cir.1974)).

Ill.App.3d 208, 212–13, 36 Ill.Dec. 525, 528, 400 N.E.2d 1105, 1108 (1980), and no such good faith dispute exists in this case.

Hacker also argues that, even in the absence of a dispute, the notation he made on the back of his check, coupled with the letter he sent to Lowrance created the necessary agreement to give rise to an accord and satisfaction. Hacker claims that Lowrance upon receiving the check had only two choices—he could accept the check as a settlement of the parties' dispute or refuse the check entirely. By accepting the check with its accord and satisfaction language, Hacker asserts Lowrance agreed to the settlement and Lowrance's efforts to retain his rights by striking Hacker's endorsement and adding his own was ineffective. Hacker cites the case of *Quaintance Associates, Inc. v. PLM, Inc.*, 95 Ill.App.3d 818, 51 Ill.Dec. 153, 420 N.E.2d 567 (1981), for this proposition. In *Quaintance*, the creditor received a partial payment from the debtor. The debtor had given notice that the check was given in full satisfaction of the debt. The creditor, without informing the debtor, typed his own language on the back of the check, stating that the acceptance of the check was not a release of the full debt. While there are many similarities between the situation in *Quaintance* and this case, there is a critical difference that Hacker fails to point out—in *Quaintance*, there was clear and unmistakable evidence that the amount of money owed was in dispute. Hacker's belief that the creditor must either accept or reject the offered settlement would be correct if the amount of the debt were in dispute. *Sears, Sucsy & Co. v. Insurance Co. of N. America*, 392 F.Supp. 398, 404 (N.D.Ill.1975). However, the fact that Hacker placed a condition of acceptance on the reverse side of the check means nothing if no bona fide dispute existed.[2] *A. & H. Lithoprint, Inc. v. Bernard Dunn Advertising Co.*, 82 Ill. App.2d 409, 226 N.E.2d 483 (1967) ("A partial payment of a fixed and certain demand, which is due and not in dispute, is not full satisfaction of the entire debt not withstanding any conditions placed by the debtor upon acceptance of the payment.").

Hacker also failed to establish that Lowrance intended the $13,000 check to act as an accord and satisfaction. In Illinois, "a transaction will constitute an accord and satisfaction of a claim only where both parties intended it to have that effect." *Holman v. Simborg*, 152 Ill.App.3d 453, 456, 105 Ill.Dec. 682, 684, 504 N.E.2d 967, 969 (1987). Without a demonstration that Lowrance intended to accept the check in full satisfaction of the debt, the payment only operates as a discharge of the amount tendered. *Id.* Hacker attempted to unilaterally create an accord and satisfaction. There is no evidence that Lowrance ever agreed to any compromise of the debt. There is no evidence that he signed the purported letter of agreement sent to him by Hacker and the district court accepted Lowrance's testimony that he never agreed orally to any settlement.

In addition, Hacker claims that he was insolvent at the time he sent the $13,000 check to Lowrance, and that such insolvency creates the consideration necessary to establish an accord and satisfaction. Hacker cites *Poray, Inc. v. Crescent Indus., Inc.*, 13 Ill.App.2d 369, 141 N.E.2d 879 (1957), for this proposition. In *Poray*, the Illinois court carved out an exception to the requirement that a bona fide dispute exist between the parties. The Illinois court stated that the requirement does not apply to a failing debtor when the "creditor knows the debtor is in failing circumstances or has substantial reason for believing so." 13 Ill.App.2d at 373, 141 N.E.2d at 881. *See also A. & H. Lithoprint, Inc. v. Bernard Dunn Advertising Co.*, 82 Ill. App.2d 409, 226 N.E.2d 483 (1967). Hacker notes that he informed Lowrance on February 21 of the $1,000,000 judgment entered against him in his suit with American Can

---

2. It is unclear whether Illinois law authorizes a creditor to reserve rights to a debt by adding an endorsement, as Lowrance did in this case. *Nelson v. Fire Insurance Exchange*, 156 Ill. App.3d 1017, 1021–22, 109 Ill.Dec. 516, 520–21, 510 N.E.2d 137, 141–42, *appeal denied*, 116 Ill.2d 562, 113 Ill.Dec. 303, 515 N.E.2d 112 (1987). This court need not address this question since the absence of a bona fide dispute establishes that no accord and satisfaction arose.

Co. and told him of his poor financial condition.

This exception to the bona fide dispute requirement does not alter the result in this case. The district court found that while Hacker may have had a cash flow problem at the time he spoke with Lowrance, his situation did not indicate that he was insolvent. Evidence presented at trial established that Hacker had abundant assets. The court found that Hacker never indicated to Lowrance that he intended to file for bankruptcy. The district court interpreted Hacker's discussion of his financial trouble as an attempt to gain more time to pay his debt and not as a suggestion that he was seeking an accord and satisfaction. This situation is far different from the *Poray* case where the creditor was present in bankruptcy court when the settlement was fashioned. *Poray*, 13 Ill. App.2d 369. *Winter v. Meier*, 151 Ill.App. 572, 574 (1909), also cited by Hacker, is distinguishable from this case because in *Winter*, the creditor had given a written release of all claims, indicating an understanding of the financial condition of the debtor. Lowrance's failure to dispute Hacker's cash flow problem does not indicate that he accepted payment with knowledge of Hacker's insolvency, as Hacker claims. The district court's finding that Hacker was using his poor financial condition to seek additional time to pay must be upheld.

Finally, Lowrance filed with this court a motion "to be granted leave to correct judgment" pursuant to Fed.R.Civ.P. 60(a). Such a motion is not properly before this court. Under Rule 60(a), the determination of whether a judgment should be corrected must first be made by the district court and it was not.

The district court's determination that Defendant Hacker failed to establish the affirmative defense of accord and satisfaction was correct and the judgment awarding Plaintiff Lowrance $39,309.30 plus interest is AFFIRMED.