JUAN VALASQUEZ *et al.*, Indiv. and on Behalf of All Persons Similarly Situated, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—92—0876

Opinion filed May 10, 1993.

Alexander, Fennerty & Green, of Chicago (Michael Green, of counsel), for appellants.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal and Mardell Nereim, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiffs, Juan Valasquez and Cora Sue Roberts, individually and as class representatives on behalf of all persons similarly situated, appeal the dismissal of their class action suit against defendant City of Chicago (the City) for failure to state a cause of action. Plaintiffs' complaint, filed October 9, 1990, sounded in conversion and alleged that the City improperly failed to credit them and other past and current participants in the City's deferred compensation plan (the Plan) with interim interest which accrued between the time of withholding and payment to the Plan's administrator for investment. Plaintiffs sought class certification, an accounting, declaratory and injunctive

relief, attorney fees and damages. The sole issue on review is whether the circuit court properly dismissed plaintiffs' complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) for failure to state a cause of action.

Plaintiffs' complaint, the well-pled facts of which must be taken as true for purposes of the City's motion to dismiss, may be summarized as follows.

Since 1981, and as amended in 1985, the City has offered its employees a deferred compensation plan through which City employees may defer the receipt and taxation of designated portions of their salaries until future years. The Plan's introductory paragraph states:

> "The City of Chicago hereby adopts and establishes the City of Chicago Deferred Compensation Plan (hereinafter called the Plan). The Plan consists of the provisions set forth in this document, and is applicable to each public employee who elects to participate in the Plan. The Plan is effective as to each such public employee upon the date he becomes a 'PARTICIPANT' by signing and filing the Participation Agreement referred to herein with the Administrator."

Plaintiff Valasquez, a former City employee, participated during his employment in the Plan, withdrawing his funds therefrom upon termination. Plaintiff Roberts, a current City employee, has funds enrolled in the Plan, but no longer authorizes further deductions from her paycheck.

Under the Plan, sums deducted from a participant's paycheck are turned over to the Plan's administrator for investment; participants may select investment options. The participant's investment specification is used "as an index for determining the benefits to be paid" the participant.

Plaintiffs' complaint calls into question the time period between the City's withdrawal of monies from a participant's paycheck and delivery of that sum to the Plan's administrator. Under paragraphs 3.01 and 4.01, "[t]he EMPLOYER shall remit the *deferred amount* to the Administrator or his designated agent." (Emphasis added.) Paragraph 4.01 further provides that "[t]he EMPLOYER shall be given a reasonable amount of time, not exceeding 30 days, to effectuate this delivery of the *deferred amount* to the Administrator or his designated Agent." (Emphasis added.) The emphasized language is not defined by the Plan.

Plaintiffs complaint alleges that "[i]t was the custom and practice of the City *** throughout the relevant time period to hold the sums deducted from the gross salary of each and every [participant] for a

time period approaching the 30 day maximum allowed before transferring such sums to the [Administrator]." Further, the City made it its "custom and practice" to: "hold the sums deducted from gross salaries *** in one or more bank accounts which earned interest"; "retain the interest on the sums deducted"; and "credit [such interest] to the general fund of the CITY and to use it for the CITY'S own general purposes." Plaintiffs assert that "[s]uch conduct constitutes a conversion of funds which legally or equitably belong to the plaintiffs and all other person[s] similarly situated."

On January 23, 1992, the circuit court granted the City's motion to dismiss with prejudice. On appeal from a dismissal pursuant to section 2—615 of the Code, we must accept as true the well-pled facts of plaintiffs' complaint and address whether those facts, if proved, state a cause of action. *Barber-Colman Co. v. A & K Midwest Insulation Co.* (1992), 236 Ill. App. 3d 1065, 1069, 603 N.E.2d 1215.

Plaintiffs' claim that their complaint states a cause of action turns on whether the City is *required* to credit Plan participants with the claimed interim interest. Absent a requirement or duty on the part of the City to credit the claimed interim interest, Plan participants have no valid complaint that the City is taking money which does not belong to it.

To support their assertion that a duty or requirement exists, plaintiffs direct this court to the Plan document itself, the Internal Revenue Code (IRC) and the definition of "amounts deferred" under IRC regulations. Turning to the Plan first, we find nothing therein which would *require* the City to credit Plan participants with the claimed interim interest. At best, the Plan is either silent on the matter or ambiguous. However, neither silence nor ambiguity can assist plaintiffs.

Under paragraphs 7.01 and 7.02 of the Plan, the City is empowered: to construe the Plan; to resolve any ambiguities therein; to issue rules and regulations to administer the Plan; and to resolve any questions of fact necessary to decide a participant's rights under the Plan. It appears that, to the extent the Plan leaves unresolved the question of interim interest, participants have contractually given the City the right to resolve the issue against them. Plaintiffs' remedy, if any, rests with negotiating a different agreement, not having this court judicially rewrite the current one.

Relative to the IRC, plaintiffs argue that the Plan must comport with the requirements of the IRC. We agree; however, the relevant IRC provision—section 457—does not *require* the City to credit participants with the claimed interim interest.

Section 457 provides in relevant part:

"§457. Deferred compensation plans of State and local governments and tax exempt organizations

(a) Year of inclusion in gross income

In the case of a participant in an eligible deferred compensation plan, any amount of compensation deferred under the plan, and any income attributable to the amounts so deferred, shall be includible in gross income only for the taxable year in which such compensation or other income is paid or otherwise made available to the participant or other beneficiary.

(b) Eligible deferred compensation plan defined

For purposes of this section, the term 'eligible deferred compensation plan' means a plan established and maintained by an eligible employer—

* * *

(6) which provides that—

(A) all amounts of compensation deferred under the plan,

(B) all property and rights purchased with such amounts, and

(C) all income attributable to such amounts, property, or rights,

shall remain (until made available to the participant or other beneficiary) solely the property and rights of the employer (without being restricted to the provision of benefits under the plan), subject only to the claims of the employer's general creditors." 26 U.S.C. §457 (1988).

We interpret "all amounts of compensation deferred under the plan" and "all income attributable to such amounts" to mean income once the deferred compensation has entered the Plan.

We reach the same conclusion under the applicable IRC regulations. "Amounts deferred" is defined within the IRC regulations to mean "compensation deferred under the plan, plus income attributable to compensation so deferred." (26 C.F.R. §1.457-1(d)(3) (1992).) Like the IRC, the regulation speaks in terms of income from compensation once it has entered the Plan, not before.

*Ryan v. City of Chicago* (1986), 148 Ill. App. 3d 638, 499 N.E.2d 517; and *O-Kay Shoes, Inc. v. Rosewell* (1984), 129 Ill. App. 3d 405, 472 N.E.2d 883, cases upon which plaintiffs rely, are inapplicable. In *Ryan*, Illinois statutes required pension fund tax receipts to be held for the benefit of the pension funds. Plaintiff has cited no such parallel provision relative to deferred compensation plans, and the only Illi-

nois statute found addressing the matter of deferred compensation plans is silent on the issue of interim interest (see Ill. Rev. Stat. 1989, ch. 108½, par. 24—101 *et seq.*).

In *O-Kay Shoes*, the court held that the treasurer of Cook County wrongfully withheld interest earned on the investment of condemnation awards which had been deposited with the treasurer. The rationale of this decision, however, was that the money " 'belonged to the condemnees and at no time did the county have a legitimate claim to it or any interest in it.' " (*O-Kay Shoes, Inc.*, 129 Ill. App. 3d at 410, quoting *Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 365, 399 N.E.2d 1295.) Here, amounts held by the City as deferred compensation belong to the City pursuant to the terms of the Plan. The Internal Revenue Code so requires. *O-Kay Shoes* is thus distinguishable.

In summary, plaintiffs' complaint fails to state a cause of action. We accordingly affirm the order of the circuit court of Cook County which dismissed plaintiffs' complaint with prejudice.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.