JAMES H. CANEL, Indiv. and on Behalf of a Class of All Others Similarly Situated, Plaintiff-Appellant, v. JUDY BARR TOPINKA, Treasurer of the State of Illinois, *et al.*, Defendants-Appellees.

First District (3rd Division) No. 1—01—2069

Opinion filed June 30, 2003.

66

Arthur T. Susman, Charles R. Watkins, and John R. Wylie, all of Susman & Watkins, and William J. Harte, of William J. Harte, Ltd., both of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Brett E. Legner, Assistant Attorney General, of counsel), for appellees.

JUSTICE HALL delivered the opinion of the court:

The plaintiff, James H. Canel, appeals from an order of the circuit court of Cook County granting the motion of the defendants, Judy Barr Topinka, Treasurer of the State of Illinois, and Mitchell Murdock, Director of the Unclaimed Property Division of the office of the Treasurer of the State of Illinois, to dismiss his class action complaint.

On September 11, 2000, the plaintiff filed a class action lawsuit against the defendants on behalf of himself and all others similarly situated.

The complaint alleged that section 15 of the Uniform Disposition of Unclaimed Property Act (the Act) (765 ILCS 1025/15 (West 2000)) violated section 15 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 15). The complaint also alleged that section 15 deprived the plaintiff of his fifth and fourteenth amendment rights under the United States Constitution (U.S. Const., amends. V, XIV) and thus violated 42 U.S.C. § 1983 (1996).

Specifically, the complaint alleged that, pursuant to section 15 of the Act, the defendants retained interest and dividends paid on stock, after the funds and the stock had been claimed by the owners. The complaint further alleged that such taking violated both the Illinois and the United States constitutional prohibition against the taking of private property without payment of just compensation.

On November 21, 2000, the defendants filed a motion to dismiss the complaint pursuant to both section 2—615 and section 2—619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615, 2—619 (West 2000)).

In their memorandum of law in support of their motion to dismiss pursuant to section 2—615, the defendants contended that the complaint failed to state a cause of action in that the plaintiff failed to meet all the prerequisites for a class action suit, that the retention of dividends or interest on unclaimed property did not violate the plaintiff's constitutional rights and that the plaintiff failed to state a claim under section 1983.

In support of their motion to dismiss pursuant to section 2—619, the defendants contended that the plaintiff failed to establish the existence of an actual justiciable controversy and that the complaint was barred by sovereign immunity, and therefore, the circuit court lacked subject matter jurisdiction.

On May 30, 2001, the circuit court granted the defendants' motion to dismiss. The circuit court ruled that the plaintiff's remedies were under administrative review and the Court of Claims. The plaintiff filed a timely notice of appeal.

At oral argument in this case, the defendants conceded that the plaintiff was not required to exhaust his administrative remedies and was not required to seek relief in the Court of Claims.[1] The circuit court did not address the constitutionality of section 15 of the Act.

---

[1]In their appellees' brief, the defendants contended that the dismissal of count III of the complaint, which sought the return of 88 shares of stock that the plaintiff alleged had not been returned to him, should be upheld on the basis that the plaintiff failed to exhaust his administrative remedies. However, the plaintiff acknowledges that he has not appealed from the dismissal of count III of the complaint.

However, on appeal, both parties have addressed the issue. Since the constitutionality of a statute is a question of law that this court considers *de novo*, we address the issue of the constitutionality of section 15 of the Act.

## I. Standard of Review

■ This court reviews the granting of motions to dismiss pursuant to sections 2—615 and 2—619 *de novo*. See *Nosbaum v. Martini*, 312 Ill. App. 3d 108, 726 N.E.2d 84 (2000); *Carroll v. Faust*, 311 Ill. App. 3d 679, 725 N.E.2d 764 (2000).

■ The constitutionality of a statute is also reviewed *de novo*. *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146 (2003). Statutes carry a strong presumption of constitutionality. *Arangold Corp.*, 204 Ill. 2d at 146. The party challenging a statute carries the burden of rebutting that presumption and " 'clearly' establishing its unconstitutionality. [Citation.]" *Arangold Corp.*, 204 Ill. 2d at 146. The court has a duty to uphold the constitutionality of a statute whenever reasonably possible. *Arangold Corp.*, 204 Ill. 2d at 146.

## II. Unclaimed Property Act

■ The Act provides a procedure whereby certain personal property, presumed abandoned, is placed in the custody of the State for its eventual return to its rightful owner. See 765 ILCS 1025/1 *et seq.* (West 2000).

Under the Act, persons holding property, presumed to be abandoned under the Act, must remit the property to the State, together with certain specified information regarding the owner of the property and the efforts to contact the owner. 765 ILCS 1025/11 (West 2000). After the State receives the report and the property, the State then publishes a notice advising that the property has been turned over to the State, to whom all further claims to the property must be directed. 765 ILCS 1025/12 (West 2000). Upon payment and delivery of the property, the State "shall assume custody and shall be responsible for the safekeeping thereof." 765 ILCS 1025/14 (West 2000).

■ At issue in the present case is section 15 of the Act, which provides as follows:

> "When property is paid or delivered to the State Treasurer under this Act, the owner is not entitled to receive income or other increments accruing thereafter, except that income accruing on unliquidated stock and mutual funds after July 1, 1993, may be paid to the owner." 765 ILCS 1025/15 (West 2000).

■ In order to obtain the return of property turned over to the State under the Act, an owner submits a claim on a form prescribed by the State Treasurer. 765 ILCS 1065/19 (West 2000). The State

Treasurer is required to consider any claim filed but has the discretion whether or not to hold a hearing and receive evidence on the claim. 765 ILCS 1025/20 (West 2000). The final decision by the State Treasurer with respect to a claim "shall be subject to judicial review pursuant to the provisions of the Administrative Review Law and the rules adopted pursuant thereto." 765 ILCS 1025/21 (West 2000).

### III. Whether Section 15 of the Act Is Unconstitutional

The parties' positions may be summarized as follows. The defendants contend that section 15 does not take the plaintiff's private property without just compensation because the plaintiff does not have any property rights in the dividends earned on abandoned property while in the State's custody. The defendants rely on the principles of escheat and *bona vacantia*. The plaintiff responds that the property was merely in the State's custody, a situation to which the above principles do not apply.

### A. Whether Section 15 of the Act is an "Escheat" Law

█ Black's Law Dictionary defines *bona vacantia* as follows:

"Property not disposed of by a decedent's will and to which no relative is entitled under intestacy laws. See ESCHEAT. *** Ownerless property; goods without an owner." Black's Law Dictionary 168 (7th ed. 1999).

"Escheat" is defined as follows:

"Reversion of property (esp. real property) to the state upon the death of an owner who has neither a will nor any legal heirs." Black's Law Dictionary 564 (7th ed. 1999).

"States as sovereigns may take custody of or assume title to abandoned personal property as *bona vacantia*, a process commonly (though somewhat erroneously) called escheat." *Delaware v. New York*, 507 U.S. 490, 497, 123 L. Ed. 2d 211, 219-20, 113 S. Ct. 1550, 1555 (1993).[2]

The defendants argue that under *Delaware*, the State has the right to assume title to the whole of the abandoned property. The defendants reason that since the State has the power to require that both the abandoned principle and its subsequent earnings escheat to it, the State has the lesser power to require that only the earnings escheat to it for the period of abandonment.

It has been held that the Act is not an escheat statute, in that Il-

---

[2]At common law, *bona vacantia*, rather than escheat, applied to abandoned personal property. The Court recognized that, in its opinions, escheat encompassed both real and personal property. *Delaware*, 507 U.S. at 497 n.9, 123 L. Ed. 2d at 220 n.9, 113 S. Ct. at 1555 n.9.

linois does not acquire title to abandoned property, but is merely the custodian, and the owner can reclaim the property at any time. *Commonwealth Edison Co. v. Vega*, 174 F.3d 870, 872 (7th Cir. 1999); see also *Insurance Co. of North America v. Knight*, 8 Ill. App. 3d 871, 876, 291 N.E.2d 40, 44 (1972) (the theory of the legislation is that it is custodial in nature and that the State takes custody for the owner).

In *People ex rel. Callahan v. Marshall Field & Co.*, 83 Ill. App. 3d 811, 404 N.E.2d 368 (1980), the court described the difference between the Act and an escheat statute as follows:

"The policy behind the Uniform Disposition of Unclaimed Property Act [Uniform Act], upon which the Illinois Act is modeled, is described in the Commissioner's Prefatory Note as follows:

'The Uniform Act is custodial in nature—that is to say, it does not result in the loss of the owner's property rights. The state takes custody and remains the custodian in perpetuity. Although the actual possibility of his presenting a claim in the distant future is not great, the owner retains his right of presenting his claim at any time, no matter how remote. State records will have to be kept on a permanent basis. In this respect the measure differs from the escheat type of statute, pursuant to which the right of the owner is foreclosed and the title to the property passes to the state. Not only does the custodial type of statute more adequately preserve the owner's interests, but, in addition, it makes possible a substantial simplification of procedure.' " *Callahan*, 83 Ill. App. 3d at 814-15, 404 N.E.2d at 371, quoting 8 U.L.A. 74 (1972).

The *Callahan* court further noted that the Uniform Act also gave the State, rather than the holder of unclaimed property, the benefit of the use of such property. *Callahan*, 83 Ill. App. 3d at 815, 404 N.E.2d at 371.

Nonetheless, the defendants maintain that whether the Act is an escheat law must be determined by the actual operation of the Act and that the operation of section 15 of the Act is a limited "escheat" law.

■ Escheats are not favored in the law, and any doubt whether property is subject to escheat is resolved against the State. *People ex rel. Illinois State Board of Elections v. deGrazia*, 105 Ill. App. 3d 509, 512-13, 434 N.E.2d 543, 545-46 (1982).

■ There are significant differences between the treatment of property under the Escheats Act (755 ILCS 20/1 *et seq.* (West 2000)) and under the Act.

Under the Escheats Act, undistributed funds left over from the

administration of an estate are paid to the county treasurer.[3] Under section 14 of the Act, upon the payment of the funds to the State Treasurer, the State assumes "custody" and is "responsible for the safekeeping" of the funds.

In contrast to the Act, under the Escheats Act, the county is not limited to acting as a custodian of the unclaimed funds. Under the Escheats Act, an owner has up to 10 years within which to claim his property or be barred from claiming it. See 755 ILCS 20/7 (West 2000).[4] Under the Act, an owner may claim his property at any time.

■ The defendants argue that as long as the procedure adopted satisfies constitutional requirements, the State may exercise its right to "escheat" property. However, from the above discussion, it is clear that the Act does not authorize the State to exercise its "escheat" powers.

We conclude that section 15 is not an "escheat" law and, therefore, the State may not use its powers of "escheat" as a basis for retaining the dividends in this case.

## B. Whether the Dividends are Public or Private Funds

■ "The pertinent words of the Fifth Amendment of the Constitution of the United States are the familiar ones: 'nor shall private property be taken for public use, without just compensation.' That prohibition, of course, applies against the States through the Fourteenth Amendment. [Citations.]" *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 66 L. Ed. 2d 358, 364, 101 S. Ct. 446, 450 (1980).

In *Webb's Fabulous Pharmacies, Inc.,* the plaintiff sought the interest accrued on interpleader funds deposited with the circuit court clerk and retained by the clerk pursuant to a state statute.

The Supreme Court held the retention of the interest was a taking violative of the fifth and fourteenth amendments. The Court noted, first, that the principal sum deposited was plainly private property and, thus, was not the property of the county. The Court then stated as follows:

---

[3]Under the Probate Act of 1975 (755 ILCS 5/24—20 (West 2000)), where a receipt from a ward, a distributee of an estate or a claimant cannot be obtained, the representative deposits the unclaimed funds with the county treasurer. The funds earn interest, which is paid to the person entitled to the money when it is claimed. Thus, there is a distinction in the treatment of funds depending upon whether there is no owner or where the owner merely cannot be located.

[4]Persons under a legal disability and minors have until five years after their respective disabilities have been removed to file their claims. 755 ILCS 20/7 (West 2000).

"We *** accept the further proposition, *** that '[p]roperty interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....' [Citation.] But a mere unilateral expectation or an abstract need is not a property interest entitled to protection. [Citations.]

Webb's creditors, however, had more than a unilateral expectation. The deposited fund was the amount received as the purchase price for Webb's assets. It was property held only for the ultimate benefit of Webb's creditors, *** not for the benefit of the county. And it was held only for the purpose of making a fair distribution among those creditors. Eventually, and inevitably, that fund, less proper charges authorized by the court, would be distributed among the creditors as their claims were recognized by the court. The creditors thus had a state-created property right to their respective portions of the fund." *Webb's Fabulous Pharmacies, Inc.*, 449 U.S. at 161, 66 L. Ed. 2d at 364-65, 101 S. Ct. at 451.

▪ The Court noted the usual and general rule that interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of the principal. *Webb's Fabulous Pharmacies, Inc.*, 449 U.S. at 162, 66 L. Ed. 2d at 365, 101 S. Ct. at 451. The Court further noted that a separate statute authorized the payment of the clerk's costs based upon the amount of the principle deposited. The Court concluded as follows:

"Neither the Florida Legislature by statute, nor the Florida courts by judicial decree, may accomplish the result the county seeks simply by recharacterizing the principal as 'public money' because it is held temporarily by the court. The earnings of the fund are incidents of ownership of the fund itself and are property just as the fund itself is property. The state statute has the practical effect of appropriating for the county the value of the use of the fund for the period in which it is held in the registry.

To put it another way: a State, by *ipse dixit*, may not transform private property into public property without compensation, even for the limited duration of the deposit in court. This is the very kind of thing that the Taking Clause of the Fifth Amendment was meant to prevent. That Clause stands as a shield against the arbitrary use of governmental power." *Webb's Fabulous Pharmacies, Inc.*, 449 U.S. at 164, 66 L. Ed. 2d at 366-67, 101 S. Ct. at 452.

However, the Court limited its decision in the above case to situations in which (1) there was a separate statute authorizing the payment of clerk's costs; (2) the deposited fund is private; and (3) the deposit is required by law to protect the fund from the claims of credi-

tors or others. *Webb's Fabulous Pharmacies, Inc.*, 449 U.S. at 164, 66 L. Ed. 2d at 367, 101 S. Ct. at 452.

The Supreme Court followed *Webb's Fabulous Pharmacies, Inc.* in *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 141 L. Ed. 2d 174, 118 S. Ct. 1925 (1998). In that case, the Court held that interest paid on lawyers' trust accounts was the private property of the client for purposes of the takings clause. *Phillips*, 524 U.S. at 172, 141 L. Ed. 2d at 188, 118 S. Ct. at 1934. However, the Court did not address the issue of whether a taking had occurred.

 Since, under the Act, the State does not take title to the property but merely holds it as a custodian until it is claimed by the rightful owner, the property is held for the benefit of the owner, not for the benefit of the State. Therefore, the stock and the dividends earned on it remain the property of the owner, not the State. Thus, the dividends in this case are the private property of the owner.[5]

## C. Whether the Provisions of Section 15 Constitute a Taking

In *Morton Grove Park District v. American National Bank & Trust Co.*, 78 Ill. 2d 353, 399 N.E.2d 1295 (1980), the owners appealed from an order denying them interest earned on a condemnation award deposited with the treasurer of Cook County while the case was on appeal. The owners asserted that the withholding of the interest constituted a taking in violation of the Illinois and United States Constitutions.

The supreme court first observed that in order for the owners to exercise the right to appeal, they were required to deposit the award. There was no dispute that the award was a private fund belonging to the owners. Yet under the state statute, in order to exercise the right to appeal, the owners must sacrifice the interest earned on the award. The court concluded the statutory scheme violated the owners' constitutional rights, stating as follows:

> "Under the interpretation given to this statutory scheme by the appellate court, a government entity is entitled to condemn private property and then pay the awarded just compensation into the hands of another government entity for the benefit of the public while the private individual exercises his constitutional right to appeal what he may feel to be an unjust award. It is not just that the loss of income should be cast on the owner and the public be

---

[5]Section 15 gives the Treasurer discretion to pay the interest or return the dividends. If, as the defendants maintain, these dividends are the property of the State, allowing the Treasurer to refund them, at his or her own discretion, may present a constitutional issue of a different sort. See Ill. Const. 1970, art. VIII, § 1(a) (public funds shall be used only for public purposes).

granted a windfall. *The law by which the loss is occasioned is no act of the owner but an act of government that the owner has no power to repeal or modify so as to avoid the loss.* [Citation.]" (Emphasis added.) *Morton Grove Park District*, 78 Ill. 2d at 361-62, 399 N.E.2d at 1298.

The court distinguished cases in which the county had a legitimate claim to the money that had been paid by the claimants but who were not entitled to a refund of same until an adjudication of their claims had been made and a refund order entered. *Morton Grove Park District*, 78 Ill. 2d at 365, 399 N.E.2d at 1300.

The defendants point out that *Morton Grove Park District* was distinguished in *Valasquez v. City of Chicago*, 247 Ill. App. 3d 39, 617 N.E.2d 167 (1993). However, in *Valasquez*, the issue was whether the city was entitled to the interest on funds deducted from an employee's paycheck as deferred compensation earned from the time the amount was deducted until it was deposited with the plan administrator. The court held that the city rather than the employee was entitled to the interest because the deferred compensation amounts belonged to the city under the terms of the plan. *Valasquez*, 247 Ill. App. 3d at 43, 617 N.E.2d at 169.

Recently, in *Brown v. Legal Foundation*, 538 U.S. 216, 155 L. Ed. 2d 376, 123 S. Ct. 1406 (2003), the United States Supreme Court addressed the "taking" issue it left unresolved in *Phillips*. The Court concluded that as the interest earned in the lawyers' trust accounts was the private property of the owner of the principal, the interest was taken for a public use when it was turned over to the foundation. *Brown*, 538 U.S. at 235, 155 L. Ed. 2d at 394, 123 S. Ct. at 1419. However, the Court then determined that because the plaintiffs suffered no net loss, they were not entitled to compensation. *Brown*, 538 U.S. at 237, 155 L. Ed. 2d at 395, 123 S. Ct. at 1419-20. The Court then held that where no compensation is due, there has been no violation of the just compensation clause of the fifth amendment. *Brown*, 538 U.S. at 237, 155 L. Ed. 2d at 395, 123 S. Ct. at 1420.

■ In Illinois, the Act provides that the Treasurer may deduct the costs involved in the maintenance of the records and payment of claims made pursuant to the Act. 765 ILCS 1025/18(b) (West 2000). The funds are then deposited in the State Pensions Fund. 765 ILCS 1025/18(a) (West 2000). As illustrated by the facts in this case, the plaintiff, upon presenting his claim, received his stock back. Under section 15, the Treasurer was not required to return the dividends with the stock. Therefore, when the Treasurer determined not to return the dividends to the plaintiff, a "taking" occurred.

■ We have determined that the dividends in this case were the

private property of the plaintiff and that they were "taken" by the State. However, there remains the question of what compensation, if any, the plaintiff is entitled. See *Brown*, 538 U.S. at 235, 155 L. Ed. 2d at 394, 123 S. Ct. at 1419 (" 'The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.' [Citation.]"). Where the compensation for the taking of private property is nil, there is no constitutional violation for the failure to pay compensation. *Brown*, 538 U.S. at 240, 155 L. Ed. 2d at 397, 123 S. Ct. at 1421.

The record in this case is not sufficiently developed for this court to determine the compensation issue. This case must be remanded to the circuit court for that determination.

Accordingly, we reverse the decision of the circuit court dismissing the plaintiff's complaint and remand for further proceedings in accordance with the views expressed in this opinion.

Reversed and remanded with directions.

SOUTH, P.J., concurs.

JUSTICE HOFFMAN, specially concurring in part and dissenting in part:

The trial court dismissed all three counts of the plaintiff's complaint, finding both that the claims asserted therein could only be brought in the Illinois Court of Claims and that the plaintiff had failed to exhaust his remedies under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)). The majority has reversed the trial court's order and remanded the cause for further proceedings. I write separately for two reasons. Although I agree that counts I and II of the plaintiff's complaint were erroneously dismissed, I feel compelled to set forth my reasons for so concluding. Further, I dissent in part from the majority opinion as I believe that the dismissal of count III of the plaintiff's complaint should be affirmed.

The plaintiff filed a three-count complaint predicated upon the State's retention of the dividends, interest and other accruals earned on property held by the Illinois Treasurer (Treasurer) pursuant to the Uniform Disposition of Unclaimed Property Act (Act) (765 ILCS 1025/0.05 *et seq.* (West 2000)). Counts I and II were brought on behalf of the plaintiff and all persons or entities who owned property that was held by the Treasurer pursuant to the Act and who, upon return of that property, did not receive the earnings which had accrued thereon while the property was in the possession of the State. Count I alleged that the State's retention of the earnings violates the prohibition

against taking private property without the payment of just compensation contained in article I, section 15, of the Illinois Constitution (Ill. Const. 1970, art. I, § 15). Count II, also a class action claim, asserted a violation of 42 U.S.C. § 1983 (1996), alleging that the State's retention of the earnings violates the prohibition against taking private property without the payment of just compensation contained in the fifth amendment to the United States Constitution (U.S. Const., amend. V). In count III, the plaintiff pled an individual claim, seeking to recover the income and accruals on certain corporate stock owned by him and earned while the stock was in the custody of the Treasurer pursuant to the Act. By way of relief, the plaintiff sought, *inter alia*: a declaration that the State's retention of dividends, interest and other accruals on private property in the custody of the Treasurer pursuant to the Act violates article I, section 15, of the Illinois Constitution and the fifth amendment to the United States Constitution; an injunction enjoining the defendants from retaining such earnings; and an accounting identifying all persons whose property has been returned to them pursuant to the Act without the payment of the dividends, interest or other accruals earned on such property while in the possession of the Treasurer.

The defendants filed a combined motion to dismiss the plaintiff's complaint pursuant to section 2—619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619.1 (West 2000)). For their section 2—615 (735 ILCS 5/2—615 (West 2000)) grounds, the defendants alleged that: the plaintiff's complaint does not allege the necessary prerequisites for the maintenance of a class action; the State's retention of income, dividends or interest on unclaimed property in the possession of the Treasurer pursuant to the Act does not violate either the Illinois or federal constitutional prohibitions against the taking of private property without the payment of just compensation; count II of the complaint fails to state a claim for a section 1983 violation; and the plaintiff's remedy, if any, is through the Administrative Review Law. As grounds for dismissal pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 2000)), the defendants asserted that the complaint fails to allege facts establishing the existence of "an actual justiciable controversy" and the Illinois Court of Claims has exclusive subject matter jurisdiction over the controversy.

As noted earlier, the circuit court granted the defendants' motion to dismiss, holding both that the claims asserted in the complaint could only be brought in the Illinois Court of Claims and that the plaintiff had failed to exhaust his remedies under the Administrative Review Law. Thereafter, the plaintiff filed a timely notice of appeal.

In his brief before this court and again at oral argument, the

plaintiff stated that he is not appealing the dismissal of count III of his complaint and made no argument attacking that portion of the trial court's order. For this reason, I believe that the plaintiff has waived any claim of error in the dismissal of count III (see 188 Ill. 2d R. 341(e)(7)) and that the trial court's order dismissing that count should be affirmed.

In urging reversal of the dismissal of counts I and II, the plaintiff argues that: (1) he was not required to exhaust any administrative remedies prior to challenging the constitutionality of the income retention provisions of the Act; and (2) claims seeking injunctive relief predicated upon a State agent having acted in violation of a constitutional provision may be brought in the circuit court. At oral argument, counsel for the defendants candidly conceded that the trial court erred in dismissing counts I and II of the plaintiff's complaint on the grounds stated. I agree with the concession. Where, as here, a party attacks the constitutionality of a statute on its face, he need not exhaust administrative remedies. *Phillips v. Graham*, 86 Ill. 2d 274, 289, 427 N.E.2d 550 (1981). Further, an action seeking an injunction to restrain a State officer from acting in violation of constitutional law is not an action against the State and may be brought in the circuit court. *Healy v. Vaupel*, 133 Ill. 2d 295, 308, 549 N.E.2d 1240 (1990); *City of Springfield v. Allphin*, 74 Ill. 2d 117, 124, 384 N.E.2d 310 (1978).

Their concession notwithstanding, the defendants contend that the dismissal of counts I and II should be affirmed by reason of the plaintiff's failure to allege facts supporting claims for the unconstitutional taking of private property. The defendants argue that section 15 of the Act (765 ILCS 1025/15 (West 2000)), which is at the heart of this controversy, does not provide for an unconstitutional taking of private property without just compensation because the State has the power to determine the disposition of abandoned property and to assume title thereto. They assert that the enactment of section 15 of the Act, which provides that the owner of property in the possession of the Treasurer under the Act is not entitled to receive the income or other increments accruing thereon, is a proper exercise of the State's power to dispose of abandoned property.

I believe that the flaw in the defendants' argument is its failure to recognize that the power which the State exercises over property pursuant to the Act is custodial in nature. The Act does not provide for the loss of an owner's rights in and to the underlying property which is presumed abandoned pursuant to its provisions; rather, it provides that the Treasurer will take custody of the property, be responsible for the safekeeping thereof (see 765 ILCS 1025/14 (West 2000)), and deliver the property, or the proceeds of the sale thereof, to

the owner in accordance with the claim provisions set forth in sections 19 and 20 of the Act (see 765 ILCS 1025/19, 20 (West 2000)). The Act places no time limit within which an owner is required to file a claim seeking the return of property held by the Treasurer and, as a consequence, the Treasurer remains the custodian in perpetuity. See 8 U.L.A. 74 (1972).

If the owner does not lose his rights to the underlying property, then I believe that any income earned thereon is also the property of the owner. As the Supreme Court noted in *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165, 141 L. Ed. 2d 174, 184, 118 S. Ct. 1925, 1930 (1998): "The rule that 'interest follows principal' has been established under English common law since at least the mid-1700's." See also *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162, 66 L. Ed. 2d 358, 365, 101 S. Ct. 446, 451 (1980).

As noted earlier, section 15 of the Act provides that the owner of property held by the Treasurer pursuant to the Act is not entitled to the income or other increments accruing thereon. However, the State cannot, by legislation or otherwise, transform private property into public property simply by abrogating the traditional rule that the earnings on property are incidents of its ownership and are also the property of the owner. *Webb's Fabulous Pharmacies*, 449 U.S. at 164, 66 L. Ed. 2d at 366-67, 101 S. Ct. at 452. Since the income or other increments that accrue on property in the custody of the Treasurer attach as a property right incident to the ownership of the underlying property (see *Phillips*, 524 U.S. at 168, 141 L. Ed. 2d at 186, 118 S. Ct. at 1932), it cannot be taken for public use without just compensation. Ill. Const. 1970, art. I, § 15; U.S. Const., amend. V. I conclude, therefore, that the State's retention of the income or other increments accruing on property in the custody of the Treasurer under the Act pursuant to section 15 is a taking for public use and, in the absence of the payment of just compensation, violates both the Illinois and federal constitutions.

Based on the foregoing analysis, I believe that counts I and II of the plaintiff's complaint state causes of action upon which relief might be granted. I, therefore, concur in the reversal of the trial court's dismissal of counts I and II of the plaintiff's complaint and in the remandment of the cause to the circuit court for further proceedings.